# Wytheville.

BRIGGS & COBB v. BARNETT AND ANOTHER.

June 13, 1907.

Rehearing.

June 11, 1908.

1. SHIPPING—*Ownership.*—The owners of a ship are tenants in common unless it was acquired by them as partners, or with the intention of holding it as partnership property.

2. CONTRACTS—*Consideration—Services.*—Where one renders services for another at the latter's request, the law, in the absence of an express agreement, implies a promise to pay what the services are reasonably worth, unless it can be inferred from the circumstances that those services were to be rendered without compensation.

3. SHIPPING—*Expense of Floating—Liability of Owner.*—If one of the joint owners of a stranded ship is present and knows that efforts are being made and expenses incurred to float the ship and makes no objection, he must be considered as assenting thereto and will be held responsible for his share of such expenses.

4. SHIPPING—*Powers and Rights of Owner—Tenants in Common.*—The powers and rights of co-owners of ships are in general essentially the same as in case of other tenants in common in any other chattels.

5. SHIPPING—*Owners—Liability for Expenditures.*—Where the ship's husband, who is the common agent of all the owners, is not a part owner of the ship, all the owners are responsible *in solido* for his just expenditures and charges; but when he is a part owner, each is liable for his own share of such expenditures and charges.

6. VOLUNTARY PAYMENT—*Recovery—Several Liability.*—Where parties are severally bound as principals for specific portions of a debt, and not jointly, nor jointly and severally, and one of them pays more than he is bound for, the payment is voluntary and furnishes no cause of action at law or in equity. No *assumpsit* is raised at law, nor will contribution be enforced in equity, for the voluntary payment of the debt of another.

7. SHIPPING—*Expenses Incurred by Co-owner—Contribution—Home Port.*
   If two out of four co-owners of a stranded vessel, who are in
   possession thereof, have made payments on the expense of an en-
   deavor to float it in excess of their own liability to persons who had
   no notice of an agreement between them that each was to be liable
   only for his own share of the expenses, they are entitled to contri-
   bution from the owners, for, as a general rule, a part owner of a
   vessel in undisputed possession will be regarded as having implied
   authority to bind the others for such expenses in the absence of
   any evidence to repel the presumption of such agency. But this
   rule does not apply where the vessel is in the home port unless
   express authority to bind the others be shown by the managing
   owner, for the basis of his power is the necessity of the vessel,
   and in ·the home port the owners can easily be consulted. (See
   opinion on re-hearing.)

8. CONTRIBUTION—*Equity Jurisdiction—Adequate Remedy at Law.*—The
   jurisdiction assumed by courts of law to enforce contribution in
   some cases does not affect the jurisdiction originally belonging to
   a court of equity.

Appeal from a decree of the Circuit Court of Henrico
county. Decree for complainants. Defendants appeal.

*Reversed.*

The opinion states the case.

*W. L. Williams,* for the appellants.

*W. D. Pender* and *Jeffries, Walcott & Walcott,* for the appel-
lees.

BUCHANAN, J., delivered the opinion of the court.

This is a suit for contribution instituted by Charles N. Bar-
nett and George Twohy against George S. Briggs, Vincent
Cacace and W. C. Cobb. The record shows that in March,
1904, the parties to the suit, except Cobb, became the owners
of a ship known as the "Henry B. Hyde," with her cargo, which
was lying aground in the Atlantic· Ocean near Virginia Beach,

each holding an one-fourth undivided interest therein. They determined to make an effort to float the ship and entered into a contract which was partly in writing and partly oral for that purpose. The agreement, so far as it was evidenced by a writing is as follows:

"The following agreement is hereby entered into between the undersigned owners of the ship 'Henry B. Hyde' as she lies on the beach near Dam Neck Life Saving Station, Va.

"That we will leave the matter of stripping and floating directly in the hands of Vincent Cacace, it being understood that he will make all negotiations and do the best for all concerned.

"It is further understood that he will send his barge, 'Joseph' down to the wreck to assist in the work, valuing the barge at $4,000. He is unable to secure insurance and it is understood, in the event of a loss, that each of the owners will be liable for one-fourth.

"The same will apply to the gear put aboard, including boiler and hoister and such other gear as it may be necessary for him to put."

The owners further agreed verbally that each of them, including Cacace, would advance or pay his one-fourth of the costs or expenses incurred in the venture. Subsequently W. C. Cobb purchased one-half of Briggs' interest in the vessel.

Cacace took charge of the work in March, 1904, and the work was continued until October of that year when the effort to float was abandoned, the vessel was stripped and the machinery and implements purchased and used in the work sold. The proceeds of those sales were applied to the payment of the expenses incurred in the effort to float the vessel, as were also the sums paid or advanced by the owners during the progress of the work.

The bill alleges that Cacace, Barnett and Twohy each paid his one-fourth of the expenses incurred, but that Briggs and Cobb only paid in part what was due from them, and that this

balance due from them was advanced by Barnett and Twohy who bring this suit against them to recover the same. The trial court was of opinion that they were entitled to the relief sought and so decreed.

The first error assigned is that the trial court erred in overruling the appellant's exceptions to the commissioner's report, which allowed Cacace large sums for personal services, and also upon the ground that he had purchased various articles from himself while attempting to float the ship.

It seems to be well settled that the owners of a ship are tenants in common, unless it was acquired by them as partners, or with the intention of holding it as partnership property. Freeman on Cotenancy, sec. 379; 3 Min. Inst. 801; 1 Parsons on Maritime Law, 82; Hughes on Admiralty, sec. 158.

The owners of the ship were not partners when they purchased the vessel, nor does it appear that it was intended to be held as partnership property. It seems to be a concession in the case that the owners were not partners, but tenants in common. Not being a partner but the agent of the owners of the vessel in their efforts to float it, Cacace was clearly entitled to reasonable compensation for his services, although there was no express contract to that effect. Where one renders service for another at the latter's request, the law, in the absence of an express agreement, implies a promise to pay what the services are reasonably worth, unless it can be inferred from the circumstances that those services were to be rendered without compensation.

There is nothing in this case to take it out of the general rule, and the compensation allowed Cacace under the evidence was not unreasonable.

Under the facts and circumstances disclosed by the record, there was no error in permitting Cacace to charge his co-owners with the boiler and engine and certain other articles belonging to him and used in the work. By the terms of the original agreement he was authorized to use his own barge

and his own "gear" as far as was necessary for floating the vessel, and the evidence shows that the articles furnished by him and charged to the joint owners was done at their request or with their knowledge and assent.

The action of the court in holding Briggs responsible for his share of the expenses incurred after he gave written notice that he had decided not to "gamble" longer in the effort to float the ship and did not wish to incur any further expense on that account, is assigned as error.

There was some correspondence between Briggs and his co-owners on the subject of stopping the work, but the conduct of the parties subsequent to that correspondence, especially the conduct of Briggs, is inconsistent with the theory that he was no longer interested in the effort to float the ship. He was clearly responsible for his one-fourth of the expenses incurred until he sold one-half of his interest to Cobb; after that sale he was liable for one-eighth of the expenses subsequently incurred.

The court held Cobb responsible for one-eighth of the expenses arising after his purchase. This he assigns as error.

Cobb agreed to pay one thousand dollars for the interest purchased by him. So much of this sum as was necessary to pay Briggs' share of the expenses up to that time was to be paid on that indebtedness, and the residue was to be paid to Briggs. All of it was paid by Cobb toward the expenses incurred and credited to Briggs by the commissioner in his settlement without objection from Cobb. After Cobb became interested in the vessel he was present and knew that efforts were still being made to float her, and made no objection. He must, therefore, be considered as assenting to the work and be held responsible for his share (one-eighth) of the expenses incurred after he became interested; and the court did not err in so holding.

The appellants, Briggs and Cobb, insist that even if they were responsible for their respective shares of the said expenses, Barnett and Twohy were under no obligation to pay the same,

nor were they requested to do so; and that the court erred in decreeing that the appellants should pay the same to them.

It seems to be well settled that the powers and rights of co-owners of ships are in general essentially the same as in the case of other tenants in common in any other chattels. Freeman on Cotenancy, sec. 385; 3 Min. Inst. 803.

In the absence of special contract, it seems to be settled law that where the ship's husband, who is the common agent of all the owners, is not a part owner of the ship, all the owners are responsible *in solido* for his just expenditures and charges; but where he is part owner each is liable only for his own share of such expenditures and charges. 1 Parsons on Mercantile Law, 100; 3 Min. Inst., 832-3; *Holmes* v. *Smith,* 7 Bing. 709; *Brown* v. *Tapscott,* 6 M. & W. 119.

Cacace, who was the common agent of the owners of the "Hyde" was not only a part owner, but by the terms of the special agreement under which he was acting, as we understand it, it was expressly agreed that each of the co-owners was to pay his share of the expenses to be incurred by Cacace. This we think clearly appears from the written and oral testimony in the case as to the agreement. The undertaking, therefore, of each to pay was several and not joint, nor joint and several. 3 Min. Inst. 390-1; 1 Chitty on Cont. 139; 3 Rob. Pr. (New) 99-100; *Williamson* v. *Chiles,* 5 Iredell, 244; *Larkin* v. *Butterfield,* 29 Mich. 254; *Fell* v. *Goslin,* 7 Exc. 185.

This being so, neither of the co-owners was under any obligation to pay more than his own share of the expenses due to Cacace for services rendered and materials furnished by him. If Barnett and Twohy, or either of them, made payments to him on account of the sums due him from Briggs and Cobb respectively, unless such payments were made at their request (and this is not claimed), they were mere voluntary payments and furnish no cause of action either at law or in equity. An action of *assumpsit* will not lie for money paid, for no *assumpsit* will be raised by the mere voluntary payment of the debt of another. 2 Chitty on Contr. 882; 3 Min. Inst. 359-60.

Neither would such payments give the right of contribution in equity, for the essence of contribution is that there shall be a joint liability, or a joint and several liability; but where parties are severally bound for a specific portion of a debt as principals, and one pays more than he is bound for, he is entitled to no contribution from the others for such excess. 6 Pom. Eq. Jur., sec. 916; White & Tudor's Lead. Cas. in Eq. Vol. 1, Pt. 1, p. 150-1; *Janney* v. *Stephens,* 2 Pat. & H. 11.

So far as Barnett and Twohy, respectively, made payments in excess of their own liability to persons who had no notice of the special agreement by which the liability of the co-owners of the vessel was limited to his own share of the expenses, they would be entitled to contribution from the other owners; for as a general proposition it seems that a part owner of a vessel in undisputed possession will be regarded as having implied authority to bind the other owners for things necessary for the vessel and its employment, unless there is something in the evidence (as there is not in this case) to show that such implication of agency is contrary to the fact.    25 Am. & Eng. Enc. L. (2nd ed.) 885.

The refusal of the court to recommit the report of the commissioner, in order that a detailed and itemized statement of the accounts might be made up, is assigned as error.    It is unnecessary to consider whether or not the court erred in that respect, as the case will have to be referred to a commissioner when it is remanded, to ascertain what sums if any were paid by Barnett and Twohy, or either of them, to persons other than Cacace in excess of their own share of the indebtedness due to such persons.    When this is done a detailed and itemized statement of the expenses incurred can be made by the commissioner.

Conceding that Barnett and Twohy had an ample remedy at law for the claim asserted by them in their bill, they had the right to proceed in equity, for the jurisdiction assumed by courts of law to enforce contribution in some cases does not

affect the jurisdiction originally belonging to a court of equity. *Wayland* v. *Tucker &c.,* 4 Gratt. 267, 50 Am. Dec. 76.

The other errors assigned need not be specially considered as the questions involved in them have been decided in disposing of the other assignments of error.

The decrees complained of must be reversed, and the cause remanded for further proceedings not in conflict with this opinion.

*On Rehearing.*

KEITH, P.

A decree was rendered in this case on, the 13th of June, 1907, which upon a petition to rehear was set aside and the cause reargued. We refer to the opinion then filed for the statement of the case, and will proceed to the consideration of the point presented in the petition for rehearing, which is as follows:

The court, in its former opinion, after deciding that the parties were tenants in common, said: "So far as Barnett and Twohy, respectively, made payments in excess of their own liability to persons who had no notice of the special agreement by which the liability of the co-owners of the vessel are limited to his own share of the expense, they would be entitled to contribution from the other owners, for as a general proposition it seems that as a part owner of a vessel in undisputed possession will be regarded as having implied authority to bind the other owners for things necessary for the vessel and its employment, unless there is something in the evidence (and there is not in this case) to show that such implication of agency is contrary to the fact."

It is urged in the petition to rehear, that the court had overlooked the fact that the supplies furnished and expenses incurred were in the city of Norfolk, where all of the parties resided, and that a part owner could not bind his co-owners under such circumstances.

This is not a strictly accurate statement of the case, for the vessel for which the supplies were furnished and upon which the expenditures were made, was not in the home port, but lay stranded upon the beach some miles distant from the city of Norfolk. The same principle, however, we concede, should control, because all of the parties concerned resided in the city of Norfolk, the vessel upon which the expenses were being incurred was only a few miles distant, and within easy and constant access; so that it comes, we think, within the influence of the principle which applies to vessels in a home port.

In 25 Am. & Eng. Enc. L., p. 885, speaking upon the subject of "Supplies and Repairs," it is said: "The true rule seems to be, that to enable one part owner to bind another for supplies and repairs, something more than the fact of part ownership and the reasonableness or necessity of the supplies and repairs must appear. There must be an agency of some sort, or such circumstances as to preclude the part owner whom it is sought to charge from denying his liability. As a general proposition, a part owner of a vessel in undisputed possession will be regarded as having implied authority to bind the other owners for things necessary for the vessel and its employment, unless the evidence discloses something to indicate that such implication of agency is contrary to fact. The authority of one whose possession is acquiesced in to act to this extent for all is the proper inference unless in a particular instance something appears to limit or disprove it." And in the foot-note to this passage, it is said: "The rule has been laid down that a part owner of a vessel, who has not the general authority of a master nor the special authority of a ship's husband or agent, cannot procure repairs and supplies at the port where his co-owners reside, and bind them without their consent."

In this case, there was no one clothed with the general authority of a master, nor with the special authority of a ship's husband or agent, but such agency as existed grew out of the implied authority of one part owner to bind another.

In *Spedden* v. *Koenig,* 78 Fed. 504, Judge Brawley, speaking for the circuit court of appeals, says: "In the home port, where all the owners reside, the managing owner, though registered as such at the custom house, cannot, merely by virtue of that relation, order supplies and bind his co-owners to a personal liability therefor; nor do they become liable merely because the creditor, on his books, charges the supplies against the vessel and owners." This case was approved in *Woodall* v. *Dempsey,* 100 Fed. 653.

Hughes on Admiralty, at p. 299, states: "It is well settled that the managing owner cannot bind the others in the home port unless express authority be shown, for the basis of his power is the necessity of the vessel, and in the home port the owners can easily be consulted."

Nor do we think there was anything in the conduct of the appellants which estops them to deny the authority of their co-owners to bind them for expenses incurred after August 22, 1904. On that date Briggs addressed the following letter to Barnett, Cacace and Twohy, co-owners with him of the ship:

"Gentlemen: As explained to Mr. Barnett and Mr. Twohy, I have decided not to gamble any more on the ship 'Hyde,' and desire to withdraw from further expense connected with getting the ship off of the beach, and that all wreckage and other tools we own that may be gotten off the ship be brought in and sold and the ship sold for the best price possible, each to receive their proper proportion after the sale and paying all expenses up to this date.

"If, however, this is not agreeable to the rest, not desiring in any way to stop you from the proposed plan of getting the ship off the beach, I would be willing to have my interest stay in the ship on the condition that no more calls are to be made on me for the expenses of getting the ship off, and, if you fail in the undertaking I would lose all my interest, but, if the ship came off, my interest to be in proportion to the money paid in by myself and the actual cost of the ship to get her off.

"If, on the other hand, you care to make me a proposition by taking an inventory of what there is salable about the ship and the ship itself, and taking from same the outstanding debts to date, it would be perfectly satisfactory to me to settle on this basis.                         Yours very truly,

                         "GEO. S. BRIGGS."

Here is an explicit notice to his co-owners that he did not mean to be at any further expense with respect to this ship. It is equally plain from the letter, however, that it was not an abandonment of all interest in the ship. If his co-owners saw proper to make further expenditures, then the interest of Briggs was to remain, but to be in the proportion the money paid in by him bore to the actual cost of floating the ship. It is true as urged by appellees, that after that letter was written Briggs took an interest in the efforts to float the ship; and it also appears that after the date of that letter hopes were from time to time entertained of speedy success in the enterprise, and under the influence of the expectation that the ship would be speedily floated it appears that Briggs refused to part with his interest in her; but this conduct on his part cannot be construed as contradicting or in any degree modifying the terms of his letter of the 22nd of August, 1904. His conduct is easily explicable by reference to those passages in his letter from which it clearly appears that he did not mean to abandon his interest in the ship, but to claim his share in her, in case his co-owners succeeded in their enterprise, and afforded no just ground for holding him liable to his co-owners upon the doctrine of implied agency.

It was held in the opinion heretofore rendered, that Barnett and Twohy had no cause of action against Briggs and Cobb, on account of payments made by them to Cacace on account of sums alleged to be due to him from Briggs and Cobb, as those payments were voluntary and furnished no cause of action, either at law or in equity. It was further held, that such payments gave no right of contribution in equity; and we

now hold, for reasons already stated, that Barnett and Twohy, as co-owners, had, under the circumstances of this case, no authority to bind Briggs and Cobb, as their agents, and that Briggs and Cobb are not estopped by their conduct to deny the agency.

The decree heretofore rendered will be modified so as to conform to the views herein expressed, and in all other respects the opinion heretofore filed and the decree then rendered are approved and adhered to.

*Reversed.*