# Wytheville.

## HAYNES CHEMICAL CORPORATION v. STAPLES & STAPLES, INCORPORATED.

### June 15, 1922.

1. IMPLIED CONTRACTS—*Services Rendered to Another at His Request—General Rules.*—Where one renders service for another at the latter's request, the law, in the absence of an express agreement, implies a promise to pay what those services are reasonably worth, unless it can be inferred from the circumstances that the services were to be rendered without compensation.

2. IMPLIED CONTRACTS—*Services Rendered to Another at His Request—Advertising Plan—Case at Bar.*—In the instant case, plaintiff, at the request of the treasurer and director of defendant, prepared an advertising plan for defendant, the director promising that the plan would receive the heartiest consideration on the part of his people, and, if satisfactory, the advertising would go to plaintiff. Plaintiff does not submit its plans in competition, and had no notice of competition in this instance. Plaintiff presented the plans to the director and other officers of the corporation who expressed themselves as satisfied. But the board of directors of defendant gave the advertising to another agency because the president of the company felt that it should have a New York agent.

   *Held:* That it could not be inferred from the circumstances that the services of the plaintiff, so far as concerns the expenses incurred by it, were to be rendered without compensation. The law implied a promise to pay any reasonable amount expended by plaintiff in complying with the request of the defendant.

3. IMPLIED CONTRACTS—*Refusal of Performance by Party to Contract after the Other Party has been put to Expense.*—A person cannot request another to pay out money, or perform services for him, upon his agreement to render certain services for that person, and then, after the money is paid, or the services performed, refuse to keep his agreement and escape liability for the amount of money or labor so expended at his request. The defendant having refused to perform the contract, the party paying the money or rendering the services in pursuance thereof may treat it as a nullity and recover the money or value of the services under the common counts.

4. CONTRACTS—*Consideration—Consideration from Which the Law Would Not Imply a Promise—Case at Bar.*—In the instant case where plain-

tiff, an advertising agency, had, at defendant's request, prepared an advertising plan for it, which defendant had turned down without consideration, officers of defendant corporation told the vice president of plaintiff that they felt that plaintiff should be compensated and asked him to send a bill. Defendant contended that such subsequent express promise did not create any new cause of action, and was without consideration under the principle that an express promise cannot be supported by a consideration from which the law would not imply a promise.

*Held:* That this rule had no application, as there was an implied promise to pay the amount expended at defendant's request.

5. AGENCY—*Officers and Agents of Private Corporations—Authority in Agent—Evidence of Ratification.*—An act of an agent from which he derives no personal benefit, but which is done in good faith for the benefit of his principal, and which was apparently necessary and would redound to his benefit, will be held to have been ratified and acquiesced in, and thereby rendered valid upon slight evidence. And this doctrine is as applicable to corporations as to other principals.

6. OFFICERS AND AGENTS OF PRIVATE CORPORATIONS —*Authority of Officers —Director, General Manager and Vice President.*—A contract was entered into by a director and treasurer of a corporation. The contract was within the charter powers of the corporation and was made with the knowledge and consent of the vice president and general manager and another director of the company. The contract was repudiated by the corporation, but not upon the ground that the director had no authority.

*Held:* That, admitting that the making of the contract was irregular, in its inception, those who governed the corporation would be held, by their conduct, to have waived such irregularity, and the corporation was estopped to rely on it as a defense.

Error to a judgment of the Law and Equity Court of the city of Richmond in a proceeding by motion for a judgment for damages. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Williams & Mullen* and *Guy B. Hazlegrove,* for the plaintiff in error.

*R. Grayson Dashiell,* for the defendant in error.

WEST, J., delivered the opinion of the court.

The defendant in error, Staples & Staples, Incorporated, hereinafter called the plaintiff, recovered a judgment against the plaintiff in error, Haynes Chemical Corporation, hereinafter called the defendant, in the Law and Equity Court of the city of Richmond for the sum of $707.09 with interest from February 28, 1921, till paid. The case is here upon a writ of error to that judgment.

The plaintiff and defendant are both corporations duly chartered under the laws of the State of Virginia.

The defendant is engaged in the manufacture and sale of an insecticide product known as "Preventol."

The plaintiffs are engaged in the advertising business, styling themselves "Advertising Counsellors," who are in a sense advisors to the manufacturers of the country as to how to market their products, there being over one hundred of these advertising agencies in this country. A manufacturer desiring to put a product upon the market, selects an agent and directs him to map out plans for marketing his product. The agent's remuneration for handling the advertising campaign usually consists of a commission of 15 per cent. on the space which the manufacturer buys and is paid by the publishers. The cost of drawings, displays and matters of that kind is invariably paid for by the manufacturer of the goods.

In August, 1919, C. P. Hasbrook, treasurer and a director of the defendant corporation, had an interview with H. L. Staples, president, and J. W. Fawcett, vice president, of the plaintiff corporation, and commissioned them to prepare an advertising plan for the defendant, showing them how to put "Preventol" on the market, promising them their plans would receive the heartiest consideration on the part of his people, and, if satisfactory, the advertising under

such plan would go to them. The plaintiff does not submit plans in competition, and no notice of competition was given it until its plans had been perfected and submitted.

Acting under instructions of Director Hasbrook, the plaintiff proceeded to make the plans without expectation of payment therefor, if satisfactory, as in that event the plaintiff would be selected to handle the campaign and make his commission out of the publishers; and if unsatisfactory, it would be entitled to nothing, provided, in either event a decision in good faith was made on the merits of the plan. Later on Hasbrook requested the plaintiff to speed up the plan and on October 12, 1919, Staples and Fawcett presented the plan to C. P. Hasbrook, treasurer and director, L. G. Larus, director, and Roger Topp, vice president and general manager of the defendant corporation, all three of whom expressed themselves as satisfied with the campaign plan in all respects.

Hasbrook and Larus left the room, stating that Topp, as general manager, was the man to sell, and would have the last say; and at their suggestion the plans were left at defendant's office for their study. Later Hasbrook attended a meeting of the board of directors of his company in New York, taking with him the proxy of Larus. Having no notice of the meeting, no representative of the plaintiff was present to explain the plan, nor was the plan itself, the sketches, statistics, merchandise data, or results of trade investigations, there. At the close of the meeting, Hasbrook telegraphed Topp: "Our president deems it necessary to have a New York agent. Advise Staples."

The plaintiff, on condition of a fair decision, on its merits, had spent a large sum of money to produce a satisfactory plan, and there is nothing in the tele-

gram to indicate that the plan was not satisfactory. Later Topp said to Staples and Fawcett, in discussing what happened at the New York meeting, "It looks like you got the rough end of the poker; however, you did a good job; your work was fine, and we feel you ought to be recompensed, and we would like for you to send us a bill for your expenses."

The bill was sent, but not paid, and this suit was brought to collect it.

The defendant's assignments of error are to the action of the court:

1. In refusing certain instructions asked for by the defendant;

2. In granting certain instructions;

3. In overruling defendant's motion to set aside the verdict of the jury;

4. In entering judgment upon the verdict.

The instructions granted by the court were as follows:

### INSTRUCTION NO. 1.

"The court instructs the jury that if they believe from all the evidence that the defendant requested the plaintiff to devise and submit a plan of advertising to them, and it was known to the defendant that the costs and expenses were connected with the work to be done by the plaintiff, and no express agreement was made between the parties with reference to payment for the services of the plaintiff, then the jury may infer from the evidence an implied contract on the part of the defendant to reimburse the plaintiff for such expenses in connection with getting up the advertising plan as were reasonably within the contemplation of the parties."

### INSTRUCTION NO. 2.

"The court instructs the jury that if they believe from the evidence that the plaintiff performed certain work at the instance and request of the defendant and thereafter the defendant acknowledged liability to the plaintiff for the expenses incident thereto and promised to pay the same, they shall find for the plaintiff in whatever amount they deem reasonable under all the circumstances of the case for such expenses."

### INSTRUCTION NO. 3.

"The court instructs the jury that if they believe from the evidence that the defendant did no more than to agree that the plaintiff should devise and submit to it for its acceptance a plan for an advertising campaign, then the defendant is not liable to the plaintiff for any expenses incurred in and about getting up the plan to submit to the defendant."

### INSTRUCTION NO. 4.

"The court instructs the jury that if they believe from the evidence that it was understood between the parties the plaintiff was merely to offer plans or specifications or a plan for advertising the product of the defendant for sale, and whether such specifications or plan were offered in competition with others or not, then the defendant is not liable for the expense of getting up such a plan unless accepted by it."

### INSTRUCTION NO. 5.

"The court instructs the jury that where one party requests of another an opportunity of submitting an

offer, then unless it be in the minds of both parties and understood and agreed at that time that the party making the offer is to be reimbursed for his expenses in submitting the same, then the law does not raise an implied contract for such reimbursement unless the jury shall further believe that there is a custom and usage equally within the knowledge of both parties and with reference to which they can be necessarily presumed to have contracted, calling for such reimbursement.''

Instructions numbered 1 and 2 were given by the court at the request of the plaintiff; instruction numbered 3 was given by the court of its own motion, after refusing instructions offered by the defendant; instruction numbered 4 was given by the court in lieu of instruction ''B,'' as requested by the defendant; and instruction numbered 5 was given at the request of the defendant.

[1] Where one renders service for another at the latter's request, the law, in the absence of an express agreement, implies a promise to pay what those services are reasonably worth, unless it can be inferred from the circumstances that those services were to be rendered without compensation. *Briggs* v. *Barnett*, 108 Va. 404, 61 S. E. 797.

[2] It plainly appears from the evidence that the primary consideration which moved the plaintiff to prepare the advertising plan was the assurance of the representative of the defendant corporation that his people would give the plan heartiest consideration; which meant nothing less than a full and fair consideration of the plans and specifications upon their merits, by the proper authorities of that corporation. The record shows that the board of directors, which, according to the present contention of the defendant,

was alone authorized to pass upon them, never gave the plaintiff an opportunity to present its plans, and, without seeing them, and without regard to their merits, gave the contract to another agency, because the president of the company felt they should have a New York agent.  In view of such conduct on the part of the defendant it cannot be "inferred from the circumstances" that the services of the plaintiff, so far as concerns the expenses incurred by it, were to be rendered without compensation, and we are of opinion that the law implies a promise to pay any reasonable amounts expended by the plaintiff in complying with the request of the defendant to prepare the plans.

[3] A person cannot request another to pay out money, or perform services for him, upon his agreement to render certain services for that person, and then, after the money is paid, or the services performed, refuse to keep his agreement and escape liability for the amount of money or labor so expended at his request.

It is said by the supreme court of Massachusetts in *Williams* v. *Bemis*, 108 Mass. p. 92 (11 Am. Rep. 318): "* * * * * the defendant having refused to perform the contract, the party paying the money or rendering the services in pursuance thereof, may treat it as a nullity and recover the money or value of the services under the common counts," citing *King* v. *Brown*, 2 Hill (N. Y.) 485, 487, per Nelson, C. J.

[4] There is evidence that the vice president and general manager of the defendant corporation, after the contract was awarded the New York agent, said to the vice president of the plaintiff company that they had considered the matter and felt that the plaintiff should be compensated and asked him to send bill for expenses.

The defendant contends that a subsequent express promise does not create any new cause of action, and is without consideration, except in those cases where the circumstances are such that an implied promise to pay arises. under the law; and relies with confidence on a line of cases, of which the following is representative:

*Stout* .v. *Humphrey*, 69 N. J. Law, 436, 55 Atl. 281, where it is said:

"An express promise, therefore, as it should seem, can only revive a precedent good consideration, which might have been enforced at law through the medium of an implied promise, had it not been suspended by some positive rule of law, but can give no original right of action if the obligation on which it is founded never could have been enforced at law, though not barred by any legal maxim or statute provision.

"In the case of *Beaumont* v. *Reeve*, 8 Q. B. 483, the rule is thus stated, and it is quoted by Mr. Chitty in the text of his work on contracts (volume 1, p. 54), 'that an express promise cannot be supported by a consideration from which the law would not imply a promise, except where the express promise does away with a legal suspension or bar of a right of action which, but for such suspension or bar, would be valid.' "

In our view, there is nothing in this line of cases which should deprive the plaintiff of its right to a recovery, as there *was* an implied promise to pay the amount expended at the defendant's request.

[5, 6] The defendant questions the authority of Hasbrook to bind the corporation by a contract of this nature.

It appears from the evidence that Hasbrook was treasurer and director; Larus, director, and Roger Topp, vice president and general manager, of the defendant

corporation, all of whom resided in Richmond, and that they constituted three of the five stockholders of the corporation; the remaining two, including the president, being residents of New York.

The general manager had full authority and was in active charge of the business of the company and was made vice president to increase his authority.

Hasbrook requested the work to be done and promised that the plans would have the heartiest consideration of his people, and that, if approved, the defendant would be given the contract.

The plans were in preparation for several months, during which time it is presumed that he informed the proper officials of his company as to the agreement he had made with the defendant, as he sent defendants a request to speed up the plans. When completed the plans and specifications were submitted to these three gentlemen, all of whom received and inspected them, without any suggestion from the vice president that Hasbrook had exceeded his authority in the premises. All three declared the plans satisfactory. Hasbrook and Larus, upon leaving, informed Staples that Topp, vice president and general manager, was the man they would have to sell, that he would have the last say. There is nothing in the record to show that any member of the board of directors at the New York meeting questioned Hasbrook's authority. On the contrary, his telegram intimates that the board had no objection to the plans, but the president felt the contract ought to go to a New York agent.

In *Winston* v. *Gordon*, 115 Va. 899, 80 S. E. 756, this court held:

"An act of an agent from which he derives no personal benefit, but which is done in good faith for the benefit of his principal, and which was apparently

necessary and would redound to his benefit, will be held to have been ratified and acquiesced in, and thereby rendered valid upon slight evidence." And it is said, "this doctrine is as applicable to corporations as to other principals."

The contract under consideration, entered into by one director, was within the charter powers of the corporation and was made, the circumstances tend to show, with the knowledge and consent of the vice president and general manager and another director of the company.

In *Am. B. H. O. S. Mach. Co.* v. *Burlack*, 35 W. Va. 647, 661, 14 S. E. 319, 323, the court said:

"There are so-called corporations which for all practical purposes, when they do business, cannot be reached at all if we are not permitted to treat the only known or accessible embodiment in any other way than according to the character the manager may see fit for the occasion to assume. He is possessed of full authority to talk and act when there is anything to be gained, but he is not the proper man to talk or act when there is anything to be lost; and yet the principal, for all practical purposes, if not often in reality, is represented in no other way except by a name, so that a species of legerdemain is carried on, 'now you see it, and now you don't.' The ordinary business world is becoming tired with, if not vexed at, this sort of jugglery, and thinks that the true principles of evidence and of agency are not so narrow or so rigid that they may not be made to reach such cases."

Admitting that the making of the contract was irregular, in its inception, those who governed the corporation will be held, by their conduct, to have waived such irregularity, and the corporation is estopped to rely on it as a defence to this action.

We find no error in the instructions granted of which the defendant can complain; and are of the opinion that the jury were fully and fairly instructed, and that there is no error in the court's refusal to grant instructions.

Upon the record we are unable to say that the verdict of the jury is plainly wrong, or without evidence to support it.

For the foregoing reasons the judgment complained of will be affirmed.

*Affirmed.*