149 Va. 867 (1928)
ROBERTA G. STERLING
v.
TRUST COMPANY OF NORFOLK, ADMR., ET ALS. AND TRUST COMPANY OF NORFOLK, TRUSTEE v. ROBERTA G. STERLING.
Supreme Court of Virginia.
March 1, 1928.
Hugh C. Davis, Hugh W. Davis and William L. Parker, for the appellant.
1. JUDICIAL SALES -- Offer to Court for Purchase of Infant's Land -- Construction of Statute -- General Rules on the Subject of Judicial Sales Applicable. -- The instant case was an offer to the court for the purchase of an infant's land under the statute. But this fact did not make the case an exception to the general rules of law upon the subject of judicial sales. In fact the statute for the sale of infant's land, being an exception to the common law, is construed strictly, and therefore imposes the duty of especial care and circumspection upon those dealing with the same.
2. JUDICIAL SALES -- Sale of Infant's Land -- Infant Represented by Able Counsel -- Ignorance of Law -- Case at Bar. -- In the instant case the question at issue was the authority of the secretary-treasurer and general manager of a corporation, a garage company, to purchase the land of an infant for the corporation. The infant was represented by the trust officer of a trust company appointed special commissioner of the court to sell the lot of the infant and by the attorney for the trust company. The trust officer admitted that he knew that a corporation could not purchase real estate except by authority of its board of directors, but did not know whether he knew it "as trust officer" in this transaction or not. The attorney would not say whether he knew the law or not.
Held: That under these circumstances the court could not accept ignorance of law as an excuse for failure to require the secretary-treasurer and general manager of the corporation to produce evidence of his authority from the board of directors to purchase the property, before reporting the same, as a valid offer to the court for its acceptance.
3. APPEAL AND ERROR -- Judicial Sales -- Weight to be Given the Findings of Commissioner -- Conclusion of Law. -- The rule of law with reference to the weight to be given to the findings of a commissioner, where the evidence taken before him is conflicting, can have no application where the conclusion is entirely one of law.
4. REFERENCE -- Report of Commissioner -- Effect of Report -- Report does not Bind Court Like Verdict of Jury. -- The report of the commissioner does not bind the court like the verdict of the jury. While the court possesses the absolute power of review, it is the practice to accept the report as prima facie correct and to adopt it, unless there is dissatisfaction with the report expressed in the form of exceptions. When this is done, it is the province and duty of the court to examine the evidence and review the conclusions of its commissioner, provided the evidence on which his conclusions are based is returned with his report, or proper steps are taken to put it before the court.
5. EQUITY -- Chancellor Judge of Both Law and Facts -- Chancellor Presumed More Competent than Commissioner. -- In suits in equity the chancellor is judge of both the law and facts, and is presumed to be more competent to pass upon the evidence and draw correct conclusions from it than the commissioner.
6. OFFICERS AND AGENTS OF PRIVATE CORPORATIONS -- Power of Officers -- Secretary-Treasurer and General Manager -- Power to Purchase Real Estate for the Corporation -- Case at Bar. -- In the instant case the secretary-treasurer and general manager of a corporation, engaged in general automobile business, entered into a contract with a trust company to purchase the land of an infant. The offer was submitted to the court for confirmation and a decree of confirmation was entered. The president and largest stockholder of the corporation was out of the State at the time and on his return refused to purchase the property because the secretary-treasurer and general manager had no authority to make the offer to purchase. Thereupon the secretary-treasurer and general manager called upon the trust company, requested it to release his corporation from the offer, and agreed to pay all costs and expenses. A commissioner appointed by the court reported that the secretary-treasurer and general manager had authority to make the offer, but the court held otherwise and its decision was upheld on appeal.
7. CORPORATIONS -- Authority of Secretary-Treasurer and General Manager of a Garage Company -- Purchase of Real Estate. -- While it might be desirable for a garage company to own property adjoining that in which its business was conducted, still the purchase of real estate for about $22,000 when the entire paid in capital of the corporation amounted to only $15,000 could not be considered within the scope of the business the secretary-treasurer and general manager of the corporation was employed to conduct, and therefore, by virtue of his office, he had no authority to bind the corporation for such purchase.
8. CORPORATIONS -- Number of Incorporators -- Case at Bar. -- In the instant case the question at issue was whether the secretary-treasurer and general manager of a garage corporation, who was a large stockholder, had authority to bind the company to purchase the lot of an infant. The commissioner to whom the case was referred was of the opinion that as there were only three stockholders in the garage corporation and they members of the same family, that it was a corporation in name only and not in law.
Held: That the Virginia statute permits three persons only to form and conduct business as a corporation, and there is no inhibition upon their being members of the same family, nor limitation upon the amount of stock each shall severally own.
9. CORPORATIONS -- Notice of Charter and Statutes. -- Persons dealing with corporations are affected with notice of its charter and the statutes of the State regulating its power and duties.
10. CORPORATIONS -- Powers of Board of Directors -- Number of Stockholders. -- Section 3789 of the Code of 1919 vests all the powers of the corporation in the president and directors as board of directors, and provides that it may consist of three persons, except common carriers.
11. CORPORATIONS -- Powers of Board of Directors -- Widest Powers. -- The board of directors have the widest powers, all the various acts and contracts which a corporation may enter into are entered into by and through the board of directors.
12. CORPORATIONS -- Powers of Board of Directors -- Contracts -- Bills, Notes, etc. -- The board of directors make or authorize the making of the notes, bills, mortgages, deeds, sales, liens and contracts generally of the corporation.
13. CORPORATIONS -- Powers of Board of Directors -- Appointment and Election of Officers -- Policy of Corporation. -- The board of directors appoint the agents, direct the business, and govern the policy and plans of the corporation and elect the officers.
14. CORPORATIONS -- Officers and Agents of Corporation -- Officer Holding Several Offices in Corporation. -- At common law there is no limit to the number of officer in a corporation which may be held simultaneously by the same person, provided that none of them is incompatible with any other.
15. CORPORATIONS -- Powers of Board of Directors -- Actions and Compromise. -- The board of directors institute, prosecute, compromise or appeal suits at law and in equity which the corporation brings or has brought against it.
16. OFFICERS AND AGENTS OF PRIVATE CORPORATIONS -- President -- Secretary-Treasurer. -- Neither the office of president nor secretary-treasurer of itself confers power to bind the corporation or control its property.
17. OFFICERS AND AGENTS OF PRIVATE CORPORATIONS -- Powers -- How Officer's Authority Found. -- An officer's power as an agent must be sought in the organic law of the corporation, in a delegation of authority from it, directly or through its board of directors formally expressed or implied from a habit or custom of doing business.
18. OFFICERS AND AGENTS OF PRIVATE CORPORATIONS -- Authority of Officer -- Implied Authority -- Directors Govern Policy. -- When in the usual course of the business of a corporation an officer has been allowed to manage its affairs, his authority to represent the corporation may be implied from the manner in which he has been permitted by the directors to transact its business. When the agent acts in the usual course of the corporate business with apparent authority, the corporation will not be permitted to escape liability by a plea of want of authority of its agent, especially where the party so misled has furnished the corporation with services or other things. But the board of directors must direct the business and govern the policy and plans of the corporation.
19. CORPORATIONS -- Contracts -- Power of Principal Stockholders. -- Although one person owns a majority of the stock, or all of it, or all but two shares, he does not in consequence thereof acquire the right to act for the corporation, or as the corporation, independently of the directors. One person may own all the stock, and yet the existence, relations, and business methods of the corporation continue.
20. CORPORATIONS -- Contracts -- Power of Principal Stockholder -- Exception to Rule. -- The first exception to the rule that the principal stockholder cannot act for the corporation is that corporate action may arise in other ways than by the formal action of its board of directors or meeting of stockholders or of its agents. It may arise by a long course of dealing which estops the corporation from denying the legality of that mode of dealing, or by the corporation acquiescing, or by its accepting the benefits of the transaction, or by practically all of the stockholders assenting. It may arise by passively allowing itself to be used as an instrument of wrong or illegal acts.
21. CORPORATIONS -- Contracts -- Power of Principal Stockholder -- Exception to Rule. -- The second exception to the rule that the principal stockholder cannot act for the corporation is that where a corporation is merely a "dummy" the court has power to ignore its corporate existence and to hold that the acts of the stockholders are the acts of the corporation itself.
22. CORPORATIONS -- Purchase of Lot for Purpose of Enlarging the Business -- Power of Officers and Directors. -- The purchase of a lot by a corporation for the purpose of enlarging its business is a matter of policy and planning the business of the corporation which in law depended solely for its determination upon the discretion and judgment of its board of directors.
Appeal from a decree of the Court of Law and Chancery of the city of Norfolk. Decree for defendant. Complainant appeals. The opinion states the case.
William M. Crumpler and W. P. McBain, for the appellee.
CHRISTIAN
CHRISTIAN, J., delivered the opinion of the court.
In one branch of these cases, that seem to have been heard together, the Trust Company of Norfolk was appointed special commissioner of the court to sell a certain lot of the infant, Roberta G. Sterling, located on Monticello avenue in the city of Norfolk.
The Trust Company employed J. W. Borum, a real estate agent, to assist it in the sale. J. L. Elliott, secretary-treasurer and general manager of the Elliott Motor Co., became interested in the purchase of said property. Negotiations between Charles Webster, trust officer of the trust company, and J. L. Elliott resulted in an option given to the Elliott Motor Co. by letter dated the 25th day of November, 1925, to purchase the property at $700.00 per front foot, until the 7th day of December, 1925.
The Elliott Motor Co. was incorporated for the purpose of doing a general automobile and garage business. Its capital stock is fifteen thousand dollars ($15,000.00) divided into one hundred and fifty shares (150) of the par value of one hundred dollars ($100.00) each. M. T. Elliott owns seventy-five (75) shares, R. *872 B. Elliott, his wife, five (5) shares and J. L. Elliott, his brother, seventy (70) shares. These three persons with E. G. Elliott, the wife of J. L. Elliott, compose the board of directors. Its officers are M. T. Elliott, president, J. L. Elliott, secretary-treasurer and general manager.
On the 30th day of November, 1925, J. L. Elliott determined to exercise the option for the purchase of the property, and so informed Charles Webster, the trust officer of the plaintiff. Webster thereupon dictated the following letter of acceptance for signature:
"NORFOLK, VIRGINIA, November 30, 1925. "TRUST COMPANY OF NORFOLK, "Special Commissioner, "Norfolk, Virginia. "DEAR SIR:"
"We offer to purchase the property adjoining the Elliott Motor Corporation on the south, situated west side of Monticello avenue, fronting about thirty-two feet on Monticello avenue and running back to Webster Court, at a price of $700.00 per foot, Monticello frontage; payable one-third cash, balance one year, with right to anticipate payment with interest at date of payment."
"Yours truly,"
"ELLIOTT MOTOR CORPORATION,"
"J. L. ELLIOTT,"
"Secretary-Treasurer."
J. L. Elliott next morning delivered the letter to Webster who immediately turned the same over to Hugh C. Davis, attorney for the trust company, for the purpose of submitting the offer to the court for confirmation. Davis called up W. P. McBain, an attorney who represented Elliott Corporation, when requested *873 by it, and exhibited the draft of the decree of confirmation to him for approval. McBain knew nothing of the offer nor had he been employed to represent the Elliott Motor Corporation, but after a conversation over the 'phone with Surles, assistant manager, he approved the decree, which was entered by the court on the 4th day of December, 1925.
M. T. Elliott, president and largest stockholder, was out of the State when the letter was written, and during the time the court proceedings were in progress, and did not return to Suffolk, his home, until the 7th or 8th of December.
It is true that he had discussed the matter of the purchase with his brother, J. L. Elliott, but had never agreed thereto. When J. L. Elliott told him on his return what had occurred M. T. Elliott refused to purchase the property because his brother had no authority to make the offer to purchase same. Thereupon J. L. Elliott with his attorney, McBain, called upon the trust company and explained the situation and requested it to release his corporation from the offer and agreed to pay personally all the costs and expenses. The trust company replied that it did not know what it would do; that it would have to consult Davis, its attorney, as he held a lien upon the Sterling lot, that he wanted paid.
Shortly thereafter, the court, upon application from the trust company, awarded a rule against the Elliott Motor Corporation to appear and show cause why the property should not be resold at its cost and risk. Upon the filing of its answer to said rule the court referred the matter to Commissioner Wells for a report thereon. The commissioner took the evidence of all parties to this transaction, and from the evidence it appears that M. T. Elliott never had any negotiation *874 with the trust company in reference to this purchase. The only person connected with the transaction outside of his brother, that ever mentioned the matter to him, was Borum, the real estate agent, who suggested about the time the offer was made that the corporation should purchase the property, and M. T. Elliott said he would talk with his brother about it.
Borum claimed that the above conversation took place the day the offer was made, and that M. T. Elliott must have acted upon his suggestion and authorized the offer to purchase. Elliott denied that he ever acted upon the said suggestion if it was ever made.
Commissioner Wells reported to the court that "on the whole case your commissioner is of opinion, and so reports, that J. L. Elliott had authority to make the offer on behalf of Elliott Motor Corporation, as set forth in the letter of November 30, 1925, and that after said offer was accepted by this court in its decree of December 4, 1925, it became and was binding on Elliott Motor Corporation." The commissioner called for the by-laws of the corporation when examining the witnesses and was informed that they had been misplaced but would be produced -- they were produced and filed with the exceptions of the corporation to the report of Commissioner Wells. This is mentioned here because the real basis of his conclusion in the report is stated therein as follows: "So, if it be true of this corporation that authority had to be given to its officers by resolutions of its board of directors (there being no by-laws in existence) it is not clear how it could transact any business whatsoever. The truth of the matter is, that although the organization was corporate in form, it was in reality a partnership, made up of the two Elliotts, and either one had power to bind the organization." *875 
Upon the filing of the report of Commissioner Wells, the Elliott Motor Corporation excepted to the same, and upon consideration of said report, with the exceptions thereto and argument of counsel, the learned chancellor was of opinion that J. L. Elliott was not authorized to purchase the property for or on behalf of the Elliott Motor Corporation, and that said corporation was not bound thereby, sustained the exceptions of the Elliott Motor Corporation and dismissed the rule theretofore awarded against it. From the above opinion and decree the trust company appealed and its appeal is before this court for consideration.
[1, 2] In the argument before this court especial stress and emphasis was placed upon the fact that this was an offer to the court for the purchase of an infant's land under the statute. That fact did not make the case an exception to the general rules of law upon the subject of judicial sales. In fact the statute for the sale of infants' lands, being an exception to the common law, is construed strictly, and therefore imposes the duty of especial care and circumspection upon those dealing with the same. In the case before the court, the infant was not represented by a person ignorant or inexperienced, but on the contrary the infant was represented in the transaction by a large business corporation; officered by intelligent business men of large experience. Webster, the trust officer, who conducted the negotiations, admitted in his testimony that he knew that a corporation could not purchase real estate except by authority of its board of directors -- but that he did not know whether he knew it as trust officer in this transaction or not. Davis, the attorney, who reported the offer to the court and conducted the proceedings that resulted in the confirmation of the sale, would not say whether he knew *876 the law or not, but answered that it was a question of law for the court. Under the circumstances of this case, they can hardly expect the court to accept ignorance of law as an excuse for failing to require J. L. Elliott to produce evidence of his authority from the board of directors to purchase the property, before reporting the same as a valid offer to the court for its acceptance.
 The rule of law with reference to the weight to be given to the findings of the commissioner, where the evidence taken before him is conflicting, can hardly have any application to this case where the conclusion is entirely one of law. Nor is the citation from Ingram Ingram, 130 Va. 329-333, 107 S.E. 653, 26 A.L.R. 1175, apposite; for in that case both the commissioner and the trial court concurred in their conclusions upon the evidence, and the Supreme Court held that upon that state of the record it would not disturb the report unless commissioner's conclusions are clearly unsupported by the evidence.
[4, 5] This court has recently reviewed the law in this State on the effect of the commissioner's report, and restated the law as follows: "The report of the commissioner does not bind the court like the verdict of the jury. While the court possesses the absolute power of review, it is the practice to accept the report as prima facie correct and to adopt it, unless there is dissatisfaction with the report expressed in the form of exceptions. When this is done, it is the province and duty of the court to examine the evidence and review the conclusions of its commissioners, provided the evidence on which his conclusions are based is returned with his report, or proper steps are taken to put it before the court. In suits in equity the chancellor is judge of both the law and facts, and is presumed to be *877 more competent to pass upon the evidence and draw correct conclusions from it than the commissioner." Hitt Smallwood, 147 Va. 778-785, 133 S.E. 503, 506.
[6, 7] The real question in this case is, did J. L. Elliott, as secretary-treasurer and general manager, have authority to purchase real estate for the Elliott Motor Corporation? The corporation is organized to do a general automobile business, and while it might be desirable to own the property adjoining that in which its business is conducted, still the purchase of real estate for about $22,000.00 when its entire paid in capital amounts to $15,000.00, could scarcely be considered to be within the scope of the business J. L. Elliott was employed to conduct, and therefore, by virtue of the offices he holds, he had no authority to bind the corporation for this purchase.
[8, 9] Commissioner Wells was of the opinion that because there were only three stockholders and they members of the same family, that it was a corporation in name only and not in law. The statute of Virginia permits only three persons to form and conduct business as a corporation, and there is no inhibition upon their being members of the same family, nor limitation upon the amount of stock each shall severally own. Persons dealing with corporations are affected with notice of its charter and the statutes of the State regulating its power and duties.
 Section 3789 Virginia Code vests all the powers of the corporation in the president and directors as board of directors, and provides that it may consist of three persons, except common carriers.
[11-15] In the case of Taylor Sutherlin-Meade Co., 107 Va. 787, 791, 60 S.E. 132, 134 (14 L.R.A.[N.S.] 1135), the Supreme Court set out the meaning and scope of the above statute by the following quotation: *878 "'The board of directors have the widest powers, all the various acts and contracts which a corporation may enter into are entered into by and through the board of directors. The board of directors make or authorize the making of the notes, bills, mortgages, deeds, sales, liens and contracts generally of the corporation. They appoint the agents, direct the business, and govern the policy and plans of the corporation. The directors elect the officers, and in this connection it may be added that at common law there is no limit to the number of offices which may be held simultaneously by the same person, provided that neither of them is incompatible with any other. They institute, prosecute, compromise or appeal suits at law and in equity which the corporation brings or has brought against it.' 2 Cook on Corporations (5th ed.) section 712; Morawetz on Private Corporations, sections 509, 510, 511."
[16, 17] The statute in Virginia having fixed the agency to conduct the business of the corporation, the office of president nor secretary-treasurer, of itself, confers no power to bind the corporation or control its property. The officer's power as an agent must be sought in the organic law of the corporation, in a delegation of authority from it, directly or through its board of directors formally, expressed or implied from a habit or custom of doing business. Crump U.S. Mining Co., 7 Gratt. (48 Va.), 352, 56 Am.Dec. 116; Hodges, Exor. Bank, 22 Gratt. (63 Va.), 60.
The powers of the corporation being delegated by law to the board of directors, there is considerable difference among the authorities whether they can delegate their authority outside of the ordinary business of the corporation -- such as authority to mortgage its property or to purchase real estate -- to its officers *879 or a committee from its own number. In Iowa, it has been held that a committee of directors authorized "to do all acts necessary for the prosperity of the society in the intervals of the meeting of the board," have not power to purchase real estate. Tracy Gutherie County Ag. Soc., 47 Iowa 27; Thompson on Corporations, sections 3954-3957.
In this connection it should be noted that the Virginia statute requires the consent of the stockholders before the property of corporations can be mortgaged.
One of the main purposes of incorporation is to limit the powers of its agents and vest those powers in a board of directors who act jointly in meeting assembled. M. T. Elliott and his wife knew that the law afforded their capital input this protection, and that he was at liberty to discuss the purchase of the real estate with his brother or Borum without binding the Elliott Motor Corporation unless the statute of Virginia was impotent. He had a perfect right not to refuse to purchase this property until the proposition was submitted to the board of directors. He misled no one to his injury by standing upon his legal rights.
 The cases of Meem, Haskins & Mitchell Big Ax Pocahontas Coal Company, 117 Va. 770, 86 S.E. 118; and Haynes Chemical Corporation Staples, Inc., 133 Va. 82, 112 S.E. 802, and other cases cited by the Trust Company, involved different principles of law from those in the instant case. The general rule of law upon which those cases were decided is stated in 7 R.C.L. pages 623-642 as follows: "It is now well settled that when, in the usual course of the business of a corporation, an officer has been allowed to manage its affairs, his authority to represent the corporation may be implied from the manner in which he has been permitted by the directors to transact its business." The *880 courts, very properly, when the agent acts in the usual course of the corporate business with apparent authority, will not permit the corporation to escape liability by a plea of want of authority of its agent, especially where the party so misled has furnished the corporation with services or other things. But the board of directors must direct the business and govern the policy and plans of the corporation.
Commissioner Wells based his finding on the fact that the two Elliotts own all but five shares of the stock, and M. T. Elliott's wife owned those five shares, therefore the Elliott Motor Company lost its corporate entity, and the law seems to be clear that all corporate contracts are to be expressly or impliedly made by the directors does not apply to this case. This is not the law. Cook on Corporations (8th ed.), section 709, on page 2913 and the following pages, sets forth the law, citing in the notes many cases supporting his conclusions, as follows:
 "A company is not liable on the contracts of a person who makes a construction contract with it, even though that person is the principal stockholder and dominates and controls the action of the corporation. A deed of corporate property by a person who owns all the stock does not convey good title. Although one person owns a majority of the stock, or all of it, or all but two shares, he does not in consequence thereof acquire the right to act for the corporation, or as the corporation, independently of the directors. One person may own all the stock, any yet the existence, relations, and business methods of the corporation continue. * * *."
[20, 21] "There are, however, two exceptions to the rules given above. The first is that corporate action may arise in other ways than by the formal action of *881 its board of directors, or meeting of stockholders, or of its agents. It may arise by a long course of dealing which estops the corporation from denying the legality of that mode of dealing, or by the corporation acquiescing, or by its accepting the benefits of the transaction, or by practically all of the stockholders assenting. It may arise by passively allowing itself to be used as an instrument of wrong or illegal acts. * * * The second exception is that where a corporation is merely a 'dummy' the court has power to ignore its corporate existence and to hold that the acts of the stockholder are the acts of the corporation itself."
Counsel for the plaintiff very earnestly contended before us that this case came within the exceptions to the general rule, but there was no evidence returned with the commissioner's report to sustain their contention.
 The purchase of the lot in question was for the purpose of enlarging the business of the Elliott Motor Corporation and was, therefore, a matter of policy and planning the business of the corporation, which in law depended solely for its determination upon the discretion and judgment of its board of directors.
From the law and facts above set forth, we are of opinion that the decree appealed from is clearly right and will be affirmed.
Affirmed.