# Richmond

## Wiley N. Jackson Company, Inc., and the Fidelity and Casualty Company of New York v. City of Norfolk.

June 13, 1955.

Record No. 4372.

Present, All the Justices.

The opinion states the case.

*Williams, Cocke, Worrell & Kelly* and *Jack E. Greer*, for the appellants.

*Leonard H. Davis* and *Joseph E. Baker*, for the appellee.

SMITH, J., delivered the opinion of the court.

This suit was instituted by Wiley N. Jackson Company, Incorporated, against the City of Norfolk seeking contribution for one half of the sums paid under a compromise settlement made by Jackson with certain land owners who claimed damages for injury to two buildings adjacent to certain construction work performed by Jackson. Jackson's surety, The Fidelity and Casualty Company of New York, which actually paid the settlement money, was made a party complainant by order of court and the suit proceeded in its and Jackson's names.

The cause was heard on the pleadings, exhibits and argument of counsel, the court dismissing the bill on the ground that the complainants, Jackson and Fidelity, were not entitled to contribution from the City. Thereafter this appeal was awarded complainants.

The pleadings and exhibits show that on July 15, 1949, a contract was entered into by the Commonwealth of Virginia, acting by and through the State Highway Commissioner, the City of Norfolk and the Norfolk and Western Railway, by which the parties agreed to undertake the construction of an underpass in the City and thereby eliminate a grade crossing of the Railway at Monticello Avenue, which at this point is part of State Highway No. 170.

This tri-party contract recites the motivating cause for the agreement and requires that each of the contracting parties perform some specific undertaking toward the completion of the project. The first provision of this agreement is in part as follows: "(1) That the construction of said 'Project' in accordance with said plans is hereby undertaken by said parties, each agreeing to pay one-third of the total cost thereof, including, among other things, cost of acquiring and clearing lands or rights of way and property damage incident to the construction of the 'Project' and costs of plans, engineering and supervision, * * *." Other undertakings of the parties pertinent to this suit are as follows:

"I. *Undertakings of the State.*

"The State will:

"(a) Let to contract and supervise the performance of all labor and the furnishing of all materials for such of the work shown on said plans as is included in Estimate A attached to and made a part hereof:

\*　　\*　　\*　　\*　　\*　　\*　　\*

"(c) Require of its contractor or contractors its Standard Performance Bond and insurance of the following kinds and amounts:
"*For the Protection of the State, the City and the Railway.*
"1. Contractors' Public Liability and Property Damage Insurance —limits $50,000 and $100,000 public liability; $25,000 and $50,000 property damage.
"2. Contractors' Protective Public Liability and Property Damage Liability Insurance—limits $50,000 and $100,000 public liability; $25,000 and $50,000 property damage."
"II. *Undertakings of the City.*

\*　　\*　　\*　　\*　　\*　　\*　　\*

"(d) Acquire and clear all lands and rights of way that may be required for the construction of the 'Project' and pay all damages to the property of adjoining or adjacent owners that may be caused by or incident to the execution of the 'Project', as distinguished from negligence in the performance of the work, it being understood that there shall be no obligation upon the State or the Railway to commence any of their undertakings until the City shall have acquired such lands and rights of way."
In addition to these undertakings each of the parties agreed to "discharge from time to time as due all costs and expenses incident to its undertakings and, as soon as practicable after the end of any month in which costs or expenses are incurred by it," render to the other parties a statement thereof. And in furtherance of this provision the following was agreed to:
"IV. *Provision for Payment and Audit and Discharge of Possible Liability not Specifically Above Mentioned.*
"(a) Upon receipt by the City and the Railway of the statement from the State pursuant to I-(d) *supra*, each will promptly pay to the State one-third of its total costs and expenses shown thereon. Similarly, upon receipt by the Railway and the State of the statement from the City pursuant to II-(i) *supra*, each will promptly pay

to the City one-third of its total costs and expenses shown thereon, and upon receipt by the City and the State of the statement from the Railway pursuant to III-(c) *supra*, each will promptly pay to the Railway one-third of its total costs and expenses shown thereon.

"(b) Upon completion of the 'Project', the State will render to the City and the Railway, the City will render to the Railway and the State, and the Railway will render to the State and the City, a complete detailed statement of all their costs and expenses, and within a period of three months thereafter each party shall be entitled to audit same and the original accounts and records of the others, for the purpose of checking and correcting mistakes or errors; and if any are found, additional payment or restitution, as the case may be, will be accordingly made; and

"(c) In the event that either the State, the City or the Railway are, as the result of negligence in the performance of their undertakings, subject to any liability, the amount of such liability shall, unless discharged by insurance or by the contractors of the parties, be treated as part of the cost of the 'Project', and each of the other parties shall reimburse them, as the case may be, for one-third thereof."

On June 8, 1950, almost a year after the execution of the tri-party agreement, the Commonwealth, in compliance with its obligation under that agreement, entered into a contract with Jackson for the construction of the underpass. The pertinent provisions of this contract are as follows:

"Contractor shall assume full responsibility for design and safety of all shoring under walls of adjacent buildings and repair or pay for all damage done."

"The Contractor shall indemnify and save harmless the State, the Commission and all of its officers, agents and employees from all suits, actions or claims of any character, name and description brought for, or on account of any injuries or damages received or sustained by any person, persons or property by or from the said Contractor or by or in consequence of any neglect in safeguarding the work, or through the use of unacceptable materials in the construction of the improvement, or by or on account of any act or omission, neglect or misconduct of the said Contractor * * *."

Contemporaneously, Jackson and Fidelity executed a bond payable to the Commonwealth, the stated purpose of which was to "save harmless" the Commonwealth. Thereafter Jackson undertook the

construction, during the course of which buildings adjacent to the site, owned by one Margolius and others, were damaged. When an action for these damages was instituted under the style of *Margolius* v. *Jackson*, the City was notified by Jackson that if there were a recovery it would look to the City for contribution on the ground that both it and the City were equally bound on a contractual liability to the landowners. Jackson also invited the City to participate in the defense of the case, but the City denied all liability and declined on the ground that there was no common burden resting upon it and Jackson. The claim for damages was ultimately settled for $125,000, which was actually paid by Jackson's surety, Fidelity.

The City contends that it is entitled to the benefits secured to the State under the State-Jackson contract since it was made by the State, pursuant to the terms of the tri-party contract, as agent of the City and Railway. Complainants admit liability to the landowners by reason of Jackson's contract with the State that it would be responsible for the shoring under walls of adjacent buildings and would repair or pay for all damages done, but contend that the City was likewise obligated for the same liability under II(d), *supra*, of the tri-party contract. Thus, the sole question presented in the trial court and in this court is whether complainants are entitled to contribution of one half the amount paid in settlement of the damage claim.

■ The right to contribution as such does not arise out of any express contract or agreement between the parties to indemnify each other, but is based on the broad principles of equity that where two or more persons are subject to a common burden it shall be borne equally, since the law implies a contract between them to contribute ratably towards the discharge of the obligation. But in order to enforce contribution the payment must have been made by one obligated to pay the whole, as between himself and the payee, but only bound to pay a proportionate part as between himself and his co-obligors. Thus where two or more persons are liable to pay a claim and one or more of them pays the whole of it, or more than his or her share, the one so paying may generally recover from the others the ratable proportion of the claim that each ought to pay. *Cooper* v. *Greenberg,* 191 Va. 495, 61 S. E. (2d) 875; *Houston* v. *Bain,* 170 Va. 378, 196 S. E. 657; *Briggs* v. *Barnett,* 108 Va. 404, 61 S. E. 797; 13 Am. Jur., Contribution, § 9, p. 12; 4 Michie's Jur., Contribution and Exoneration, §§ 11, 15, pp. 517, 521.

It is not questioned that as between Jackson and the State, Jackson was solely liable for the damage claim under its contract. It is also unquestioned that as between Jackson and the landowners, the former was obligated to pay the whole damage, but Jackson claims that as between itself and City, its obligation was to pay a proportionate part only. Hence, the question of whether the City and Jackson are bound for the same obligation depends upon the City's rights, if any, under the State-Jackson contract. The answer to this questions requires a consideration of the nature of the relationship between the State, the City and the Railway.

In entering into the tri-party contract of July 15, 1949, the parties combined their efforts and resources for a common purpose, the removal of a hazardous grade crossing, a joint undertaking of a business nature for their mutual gain and benefit. They were thus agreeing to participate in a joint adventure, which is a special combination of two or more persons, where in some specific undertaking of a business nature a profit or other gain or benefit is jointly sought without any actual partnership or corporate designation. E. g., *Jones* v. *Galleher & Co.*, 187 Va. 602, 47 S. E. (2d) 333; *Horne* v. *Holley*, 167 Va. 234, 188 S. E. 169. See 36 Va. L. Rev. 425 for an exhaustive discussion of this subject.

While no question is raised as to the authority of the parties to the tri-party contract to undertake the construction of the underpass, each had such authority. If within the scope of its legitimate powers, a corporation may participate in a joint adventure. *Salem-Fairfield Tel. Assn.* v. *McMahan*, 78 Or. 477, 153 p. 788. See Code, § 13-19. And if the enterprise may be regarded as within their respective functions and is not otherwise prohibited by law, the State, city or other political subdivision may unite in such an undertaking. For illustrative cases, see 123 A. L. R. 997.

The relations of the parties to a joint adventure and the nature of their association are so similar and closely akin to those of partners that it is commonly held that their rights, duties and liabilities are to be tested by rules which are substantially the same as those which govern partnerships. 30 Am. Jur., Joint Adventures, § 5, p. 679. As in a partnership, each member of a joint adventure has the dual status of principal for himself and agent for his associates, within the scope of the enterprise. *Hannigan* v. *Italo Petr. Corp.*, 6 Terry (45 Del.) 593, 77 A. (2d) 209, 216; 48 C. J. S., Joint Adventures. § 5, p. 827,

■ The tri-party contract specifically provided that the State require of the Contractor property damage coverage for the "Protection of the State, the City and the Railway." Thus when the State required such coverage from Jackson, it was acting as agent for the other two parties in the joint adventure. It was obligated by the tri-party contract to protect them and Jackson was aware of the provisions of this contract.

The provision in the City's undertaking that "there shall be no obligation upon the State or the Railway to commence any of their undertakings until the City shall have acquired such lands and rights of way," shows clearly that the City's liability for damages under the tri-party contract was intended to be terminated with the acquisition of the necessary rights of way, and that even this liability was to be considered a part of the cost of the project and shared equally by all three contracting parties. The City was not obligated to do any actual construction nor to pay for any damages resulting from faulty shoring of adjacent buildings, because under the State-Jackson contract all liability for damages occurring during construction was to be borne by Contractor. When Jackson and Fidelity entered into their agreement of June 8, 1950, Fidelity assumed for a consideration, such liability. It is immaterial, therefore, whether the City's alleged liability to the landowners sounds in tort or contract, inasmuch as between the City and Jackson, the latter was solely liable. Jackson and Fidelity having assumed the full responsibility for all damages done, cannot now succeed in imposing a portion of it on one of those who was intended to be protected against such liability under the several contracts and the Contractor's bond.

The City is entitled to the benefits secured to the State under the State-Jackson contract and therefore complainants are not entitled to contribution from the City. Accordingly, the decree is affirmed.

*Affirmed.*