JOHN E. ROARK, JR., ET AL.

v.

R. WAYNE HICKS

Record No. 841005

R. WAYNE HICKS

v.

ROADSIDE NURSERIES, INC., ET AL.

Record No. 841018

November 25, 1987

Present: All the Justices

472

*Leighton S. Houck (Caskie, Frost, Hobbs, Thompson, Knakal & Alford,* on briefs), for appellants. (Record No. 841005)

*Gordon M. Kent (Kent and Kent,* on brief), for appellee. (Record No. 841005)

*Gordon M. Kent (Kent and Kent,* on briefs), for appellant. (Record No. 841018)

*Leighton S. Houck (Caskie, Frost, Hobbs, Tompson, Knakal & Alford,* on brief), for appellees. (Record No. 841018)

RUSSELL, J., delivered the opinion of the Court.

We granted this appeal in two related cases which were consolidated for trial below. The first case presents the question whether the statute of limitations begins to run on a dispute between joint venturers from the time of dissolution of the joint venture or from the completion of its winding up. In the second case, we must determine whether a party who signed a promissory note as a co-maker, then paid the note and had it assigned to him, has recourse against the other co-makers.

The facts relevant to the questions raised on appeal are essentially undisputed. John E. Roark, Jr., was the sole owner of a corporation named Roadside Nurseries, Inc. (Roadside), which operated a nursery business near Altavista. R. Wayne Hicks, a certified public accountant, did the accounting work for the business. In 1976, Roark and Hicks discussed entering into a joint venture for the location, acquisition, and development of a tract of land near Lynchburg as a small shopping center. Their plan was that the parties each would contribute $30,000 cash, finance the balance of the purchase price and development costs, and own the property jointly. Roark would move his business into the shopping center where it would serve as an anchor tenant.

Largely through the efforts of Roark's wife, Jane, the parties

found a suitable tract of land near Lynchburg. At the time of contracting for its purchase, Roark was unable to produce his share of the purchase price. Hicks bought the property in his own name and personally assumed the obligations necessary for the deferred purchase price and for the development of the shopping center.

Although Hicks and Roark never arrived at an agreement in writing, it continued to be their mutual understanding that they would form a partnership for the ownership and operation of the shopping center when Roark was able to contribute $30,000 in cash. In the meantime, Roark supervised the initial development and construction of the shopping center and, with his wife, obtained most of the tenants. Roark initially contracted for the planning and construction work, while Hicks paid the bills and did the accounting work. Hicks encouraged Roark to participate actively in the development of the center, and assured him that his time, expenses, and investment in equipment would either be reimbursed to him or would be returned to him as a share of the partnership capital if a partnership were later formed.

Roark moved his business operations into two locations in the shopping center, one occupied by a garden center, the other by a gift shop. The parties agree that the rents due to Hicks for these properties were the obligations of Roadside Nurseries, Inc., which has since gone into bankruptcy.

The parties had numerous discussions concerning the terms of their proposed partnership, but never arrived at an agreement. On August 4, 1978, a dispute arose between them which put an end to any serious consideration of a partnership.

Roadside's rent payments to Hicks fell into arrears in 1981. In January 1982, Hicks went to the First National Bank of Altavista and arranged for a loan to Roadside in the amount of $8,214.96 to pay the delinquent rent. Hicks obtained a note form from the bank, obtained the signatures of all parties, returned it to the bank, and received the loan proceeds. In the lower right-hand corner of the note, in spaces provided for makers' signatures, the following signatures appear:

Roadside Nurseries, Inc.
John E. Roark, Jr Pres       JER    (seal)
John E. Roark, Jr           JER    (seal)
Jane E. Roark               J       (seal)
R. Wayne Hicks            RWH   (seal)

On August 17, 1982, Roark and Roadside filed a chancery suit against Hicks, praying for an accounting of the joint venture, enforcement of Roark's claim to an ownership interest, and damages. Hicks filed an action at law against Roadside and both Roarks, claiming that they had defaulted on the $8,214.96 note, that he had paid it, that it had then been assigned to him by the bank, and that the Roarks and Roadside were jointly liable to him on the note. In Hicks' motion for judgment, he alleged that he had merely "endorsed" the note. By agreement of the parties, the court transferred Hicks' action at law to the chancery side of the court, consolidated the cases for trial, and referred them to a commissioner in chancery.

After hearing evidence, the commissioner filed his report which contained numerous findings of fact and conclusions of law. These included findings that Roark and Hicks had been engaged in a joint venture with regard to the shopping center, that Roark was entitled to compensation for his expenditures and services in the development of the center, but that the joint venture had "terminated" on August 4, 1978, and that Hicks' plea of the statute of limitations, applied in equity by analogy, barred Roark's claim.

The commissioner opined that the statute began to run on August 4, 1978, when the parties abandoned any plans to enter into a partnership. He held that the dispute between the parties effectively "terminated" their joint venture on that date. He concluded that the three-year limitation of Code § 8.01-246(4), governing actions on unwritten implied contracts, was applicable, and that the five-year limitation of Code § 8.01-246(3), governing actions between partners "does not apply because there never was a partnership." The commissioner therefore found that Roark's chancery suit, filed in 1982, was time-barred.

With respect to the $8,214.96 note, the commissioner found that Hicks had signed as a co-maker, not as an endorser, that when Hicks paid the bank and reacquired the note in his own right, all other parties to the note were discharged by operation of law pursuant to Code § 8.3-601(3), and that Hicks' claim based on the note should be dismissed. All parties filed exceptions to the commissioner's report. The trial court, in a letter opinion, confirmed the commissioner's report in all respects and thereafter entered a final decree accordingly. We granted an appeal to Roark with respect to the issue of limitations and to Hicks with respect to his claim on the note.

## ROARK, ET AL. v. HICKS

■ The commissioner's report, confirmed by the chancellor, found that Roark and Hicks were joint venturers with regard to the shopping center. Roark agrees with that finding and Hicks assigned no cross-error to it. Accordingly, that ruling has become the law of the case. *See* Rule 5:18(b).

■ A joint venture exists where two or more parties enter into a special combination for the purpose of a specific business undertaking, jointly seeking a profit, gain, or other benefit, without any actual partnership or corporate designation. *Jackson Company* v. *City of Norfolk*, 197 Va. 62, 67, 87 S.E.2d 781, 784 (1955); *Jones* v. *Galleher & Co.*, 187 Va. 602, 609, 47 S.E.2d 333, 336 (1948); *see also Am. Realty* v. *Chase Manhattan*, 222 Va. 392, 406, 281 S.E.2d 825, 833 (1981). "[T]he relationships and duties of joint venturers and partners, toward one another, are essentially the same." *Burruss* v. *Green Auction Co.*, 228 Va. 6, 10, 319 S.E.2d 725, 727 (1984). Accordingly, the rules of law governing the rights, duties, and liabilities of joint venturers are substantially the same as those which govern partnerships. *Jackson Company*, 197 Va. at 67, 87 S.E.2d at 785. We will therefore apply the law of partnerships to resolve the statute-of-limitations question presented here.

■ We held in *Hodge* v. *Kennedy*, 198 Va. 416, 422-23, 94 S.E.2d 274, 279-80 (1956), that the statute of limitations does not begin to run on one partner's right of action against others, arising out of the affairs of the partnership, at the time of dissolution of the partnership. Rather, we held, the limitation period begins to run only when the winding up of the affairs of the dissolved partnership has been completed. In so holding, we followed a rule that has been in effect in Virginia since 1845, despite changes in the form of the statute of limitations. *See Marsteller* v. *Weaver's adm'x.*, 42 Va. (1 Gratt.) 391, 395 (1845); *Foster's Curator* v. *Rison & al.*, 58 Va. (17 Gratt.) 321, 333-35 (1867).

■ The same rule applies to joint venturers. Like partners, joint venturers have a fiduciary relationship among themselves which "begins with the opening of the negotiations for the formation of the syndicate, applies to every phase of the business which is undertaken, and *continues until the enterprise has been completely wound up and terminated*." *Horne* v. *Holley*, 167 Va. 234, 239, 188 S.E. 169, 172 (1936) (emphasis added). For that reason, the statute of limitations does not begin to run on joint venturers'

claims *inter se* at the time of dissolution. Rather, it begins to run at the completion of winding up the affairs of the dissolved enterprise. Because the business which was the subject of the Roark-Hicks joint venture had not been wound up and terminated at the time of entry of the final decree below, the statute of limitations had not begun to run on Roark's claim.

■ The rationale underlying the foregoing holding also answers the related question as to which limitation applies. Because the rules of law governing partnerships generally apply to joint ventures, the statute of limitations applicable to joint venturer's rights of action *inter se* is the five-year period prescribed by Code § 8.01-246(3), governing actions between partners, rather than the limitation governing actions on contracts. We conclude that the chancellor erred in holding Roark's claim to be time-barred.

## HICKS v. ROADSIDE, ET AL.

■ Code § 8.3-601(3) provides: "The liability of all parties is discharged when any party who has himself no right of action or recourse on the instrument (a) reacquires the instrument in his own right . . . ." Although Hicks pleaded that he was merely an endorser on the $8,214.96 note, his proof showed him to have been a co-maker, along with Roadside and both Roarks. He obtained the form note from the bank and he alone saw to the placement of the signatures on it, including his own. If he signed as maker in error, his error was purely unilateral. The commissioner's report, confirmed by the chancellor, found that he signed as a maker, and the evidence fully supports that finding.* It follows that when Hicks, who as a co-maker had no right of action or recourse on the note, reacquired it in his own right by assignment from the bank, all other parties to the note were discharged by operation of law. The chancellor correctly dismissed Hicks' claim on the note.

---

* See Official Comment to Code § 8.3-402: "[B]y long established practice judicially noticed or otherwise established a signature in the lower right hand corner of an instrument indicates an intent to sign as the maker of a note or the drawer of a draft."

On appeal, Hicks contends that he was an accommodation maker, Code § 8.3-415(1), and that after paying the note he had a right of recourse against the party accommodated pursuant to Code § 8.3-415(5). Hicks' pleadings, however, do not assert that status, but instead take the position that he was an endorser. Because the question was never framed by the pleadings, it could not be tried below and is not before us on appeal. *Harrell* v. *Woodson*, 233 Va. 117, 121, 353 S.E.2d 770, 773 (1987).

Accordingly, we will reverse the decree insofar as it sustains Hicks' plea of the statute of limitations, and remand the cause for further proceedings consistent with this opinion. We will affirm the decree insofar as it dismissed Hicks' claim on the promissory note.

> Record No. 841005 *Reversed and remanded.*
> Record No. 841018 *Affirmed.*