## CIRCUIT COURT OF BEDFORD COUNTY

Billy Jack Culwell

v.

William Raymond Huff
and AA All American, Inc.

Case No. CH98018954-00

BY JUDGE JAMES W. UPDIKE, JR.

August 4, 1999

The captioned matter is presently before the Court on the demurrer filed by the defendants, William Raymond Huff and AA All American, Inc. Upon motion of the defendants, leave is granted the defendants to file this demurrer, and it is ordered that this demurrer is deemed timely filed as of May 4, 1999.

Counsel have heretofore filed written memoranda, and oral arguments were heard on July 27, 1999.

In their demurrer, the defendants argued that plaintiff's claim is barred by the statute of limitations (three years for oral contracts); by the equitable doctrine of laches; and because the purported contract is unenforceable for reasons of illegality.

The Supreme Court of Virginia has stated the following effect of a demurrer:

A demurrer admits the truth of all material facts that are properly pleaded. Under this rule, the facts admitted are: "(1) facts expressly

alleged, (2) facts which are by fair intendment impliedly alleged, and (3) facts which may be fairly and justly inferred from the facts alleged."

*Bowman v. State Bank of Keysville*, 229 Va. 534, 536, 331 S.E.2d 797 (1985), quoting *Ames v. American National Bank*, 163 Va. 1, 37, 176 S.E. 204, 215 (1934).

In their demurrer and supporting memorandum, the defendants argue that plaintiff's cause of action is one of alleged breach of an oral contract and that pursuant to § 8.01-246(4) of the Code of Virginia, the applicable statute of limitations is three years. The defendants further argue that this three year period expired before the plaintiff filed his bill of complaint on October 9, 1998. The plaintiff responds by arguing that this is a suit in equity and that the statute of limitations is inapplicable.

Generally, statutes of limitations do not apply to matters which are exclusively cognizable in equity. 12A Michie's Jurisprudence, *Limitations of Actions*, § 7 (1989). However, the Supreme Court of Virginia has stated:

It is a well-established principle uniformly acted upon by courts of equity, that in respect to the statute of limitations equity follows the law; and if a *legal demand* be asserted in equity which at law is barred by statute, it is equally barred in equity.

*Belcher v. Kirkwood*, 238 Va. 430, 433, 383 S.E.2d 729 (1989), quoting *Sanford v. Sims*, 192 Va. 644, 649, 66 S.E.2d 495, 498 (1951) (emphasis in original).

It is therefore obvious that the nature of the claim, rather than the nature of the proceeding, determines applicability of statutes of limitations.

In his bill of complaint, plaintiff alleges that he and Huff formed a partnership in early January 1990 and that shortly thereafter, "the partnership was incorporated under the name of AA All American, Inc., all stock of which was issued in the name of Huff and his wife Joyce Huff." Bill of Complaint, paragraphs 1 and 2.

Plaintiff further alleges in his bill of complaint:

At the time of such incorporation, plaintiff was burdened by an IRS tax lien and it was therefore agreed that plaintiff and William R. Huff would receive the same salary and split the profits of the corporation evenly until such time as plaintiff could pay off the IRS tax lien, at which time the stock in AA All American, Inc., would be divided equally between the plaintiff and the defendant Huff and wife.

By the terms of the agreement between plaintiff, William R. Huff and AA All American, Inc., Billy Jack Culwell and defendant Huff were required to devote their whole time and attention to the business of AA All American, Inc., with William R. Huff being the manager at the home office and plaintiff devoting his full time to sales and the development of a sales organization and making arrangements for bank financing.

Bill of Complaint, paragraphs 3 and 4.

Regarding causes of actions by one partner against another, the Supreme Court of Virginia has stated:

As this Court stated in *Summerson v. Donovan*, 110 Va. 657, 658-59, 66 S.E. 822, 822 (1910) (citation omitted), the law in Virginia is settled that "an action at law by one partner against his copartners will not lie on a claim growing out of the partnership transactions until the business is wound up and the accounts finally settled." Given the relationship of general partners to each other and to the partnership, a contrary rule would result in the legal impossibility of each general partner being both plaintiff and defendant in the same action at law.

*Dulles Corner Properties v. Smith*, 246 Va. 153, 155-156, 431 S.E.2d 309 (1993).

The Supreme Court continued by quoting the following from *Summerson*:

(1) A dispute of this nature ordinarily involves the taking of a partnership account, or until that is taken it cannot be known but that the plaintiff may be liable to refund even more than he claims in the partnership suit. (2) In partnership transactions a partner does not as a rule become the creditor or the debtor of a copartner, but of the firm. Such a settlement may be agreed upon by the partners without an action for an accounting; but in order that it may form the basis of an action at law it must show that the partners have agreed upon the sum which each owes to the other.

*Dulles Corner Properties v. Smith*, 246 Va. 153, 156, 431 S.E.2d 309 (1993), quoting *Summerson v. Donovan*, 110 Va. 657, 659, 66 S.E. 822, 822 (1910) (citation omitted in original).

The Supreme Court concluded in *Dulles Corner Properties* that the trial court did not err by ruling that equity must obtain a dissolution and accounting of the partnership before addressing plaintiff's legal claims.

Section 8.01-246(3) provides in pertinent part that "[i]n actions by a partner against another for settlement of the partnership account" such actions shall be brought "within five years from the cessation of the dealings in which they are interested together."

As to applicability of § 8.01-246(3) and the accrual of a cause of action under that subsection, I found the decision in *Roark v. Hicks*, 234 Va. 470, 362 S.E.2d 711 (1987), to be most instructive. In *Roark*, the plaintiff, Roark, was the sole owner of a corporation, and he discussed entering into a joint venture with the defendant, Hicks. Though the parties had numerous discussions concerning a partnership agreement, the parties never arrived at an agreement. When difficulties in the business relationship developed, Roark filed a chancery suit praying an accounting of the joint venture, enforcement of his claim to an ownership interest, and damages. Among the rulings of the commissioner in chancery was a ruling that Roark's claims were founded upon an oral agreement and were therefore time-barred by the three year limitation of § 8.01-246(4). The commissioner in chancery further ruled that § 8.01-246(3) governing actions between partners did not apply because a partnership never existed. The trial court affirmed the report of the commissioner in all respects; however, the Supreme Court reversed the trial court's ruling concerning the statute of limitations. When doing so, the Supreme Court defined a joint venture as follows:

> A joint venture exists where two or more parties enter into a special combination for the purpose of a specific business undertaking, jointly seeking a profit, gain, or other benefit, without any actual partnership or corporate designation ... . "[T]he relationships and duties of joint venturers and partners, toward one another, are essentially the same." ... . Accordingly, the rules of law governing the rights, duties, and liabilities of joint venturers are substantially the same as those which govern partnerships ... . We will therefore apply the law of partnerships to resolve the statute-of-limitations question presented here.

234 Va. at 475 (citations omitted).

The Supreme Court continued by stating:

> We held in *Hodge v. Kennedy*, 198 Va. 416, 422-23, 94 S.E.2d 274, 279-80 (1956), that the statute of limitations does not begin to run on one partner's right of action against others, arising out of the affairs of the partnership, at the time of dissolution of the partnership. Rather, we held, the limitation period begins to run only when the

winding up of the affairs of the dissolved partnership has been completed. In so holding, we followed a rule that has been in effect in Virginia since 1845, despite changes in the form of the statute of limitations ... .

The same rule applies to joint venturers. Like partners, joint venturers have a fiduciary relationship among themselves which "begins with the opening of the negotiations for the formation of the syndicate, applies to every phase of the business which is undertaken, and *continues until the enterprise has been completely wound up and terminated.*" *Horne v. Holley*, 167 Va. 234, 239, 188 S.E. 169, 172 (1936) (emphasis added). For that reason, the statute of limitations does not begin to run on joint venturers' claims *inter se* at the time of dissolution. Rather, it begins to run at the completion of winding up the affairs of the dissolved enterprise.

234 Va. at 475, 476 (citations omitted).

In the present controversy, the plaintiff alleges in his bill of complaint that a partnership was formed between him and Huff in early January 1990, which partnership was shortly thereafter incorporated under the name of AA All American, Inc. For purposes of the demurrer, these factual allegations are admitted. Plaintiff further alleges that an agreement was reached between him and Huff concerning the operation of the business, the distribution of the proceeds of the corporation, and the manner in which the stock of the corporation would be allocated. When these factual allegations are admitted for purposes of the demurrer, as well as facts impliedly alleged and fairly and justly inferred, a factual basis is established for claiming the existence of either a partnership or a joint venture. As *Roark* instructs, for purposes of determining the applicable statute of limitations and accrual of a cause of action under such statute, the distinction between a partnership and a joint venture is immaterial.

I therefore rule that the five year limitation of § 8.01-246(3), governing actions between partners, applies to this case rather than the three year limitation of § 8.01-246(4).

It is alleged in the bill of complaint that the plaintiff and Huff ceased doing business together in March 1995, (Bill of Complaint, paragraph 11), and the bill of complaint was filed October 9, 1998. Consequently, the defendants' demurrer as it pertains to the statute of limitations is overruled.

The defendants next argue in their demurrer and supporting memorandum that the plaintiff's claim is barred by the equitable defense of laches. Restricting my consideration of this issue to the bill of complaint itself, as

required when ruling upon a demurrer, I do not find that the plaintiff unconscionably delayed filing his bill of complaint or that the time of filing caused prejudice to the defendants. I have already ruled that the bill of complaint was filed within the period required by the applicable statute of limitations. Moreover, I do not discern from the facts alleged in the bill of complaint any prejudice to the defendants as a result of loss of evidence or reduced reliability of evidence because of the passage of time. The defendants' demurrer, as it pertains to the defense of laches, is therefore overruled.

Finally, the defendants argue in their demurrer and supporting memorandum that the plaintiff's claim is barred because it is founded upon a contract that is void and unenforceable for reasons of illegality. In this regard, the Supreme Court of Virginia has stated:

> The general rule is that a contract made in violation of a statute is void, and when a plaintiff must rely on the illegal contract to establish his cause of action, he may not recover for damages otherwise due him.

*Taylor Thiemann & Aitken v. Hayes*, 244 Va. 198, 200, 418 S.E.2d 897 (1992).

In a much earlier decision, the Supreme Court of Virginia stated:

> The test, whether a demand connected with an illegal transaction is capable of being enforced at law, is whether the plaintiff requires the aid of the illegal transaction to establish his case. If a plaintiff cannot open his case without showing that he has broken the law, a court will not assist him, whatever his claims, in justice, may be upon the defendant; and if the illegality be *malum prohibitum* only, the plaintiff may recover, unless it be directly on the forbidden contract.

*Old Dom. Trans. Co. v. Hamilton*, 146 Va. 594, 608, 131 S.E.2d 850 (1926), quoting *Swan v. Scott*, 11 Serg. & R. (Pa.) 155.

In this same regard, the Second Restatement on Contracts, § 182, provides that if a contract is formed for an illegal purpose, and if both parties knew of the illegal purpose and facilitated it, or knew that the purpose involves serious moral turpitude, the contract is void and unenforceable.

As quoted above, the plaintiff alleges in paragraph 3 of his bill of complaint that plaintiff and Huff agreed to defer transfer to plaintiff of legal title to stock in AA All American, Inc., until plaintiff could satisfy an IRS tax lien. In his prayer for relief, plaintiff requests such remedies as injunctive

relief; the appointment of a receiver to take charge of all accounts of AA All American, Inc.; and dissolution of AA All American, Inc. Section 13.1-747 of the Code of Virginia affords such remedies to a shareholder of a corporation under certain stated conditions. However, for the plaintiff to qualify for the relief he requests, he must qualify as a shareholder of AA All American, Inc., and to do so, the Court must enforce the purported agreement between plaintiff and Huff for deferred transfer of actual ownership of a portion of the stock. Essentially, plaintiff claims that he acquired, by virtue of the agreement, an equitable interest in the stock of AA All American, Inc., and he now asks this Court to declare his legal interest in such stock, despite his earlier deferral of such acquisition to avoid the consequences of an IRS tax lien.

The Supreme Court of Virginia has stated:

> It is a hallowed rule of equity that a plaintiff must come in with clean hands, that is, he must be free from reproach in his conduct. Indeed this is one of the maxims of equity.

*McNeir v. McNeir*, 178 Va. 285, 290, 16 S.E.2d 632 (1941). In that same opinion, the Supreme Court stated a second principle of equity jurisprudence:

> [O]ne cannot profit by one's own wrong. This is an ally of that species of equity known as "equitable estoppel" which arises from conduct.

178 Va. at 290, 291.

The effect of the purported agreement between plaintiff and Huff was to conceal a financial interest from the consequences of an IRS tax lien. In my opinion, this agreement was illegal and against public policy. Moreover, this Court should not lend its authority to the enforcement and ratification of such fraudulent practices. I therefore rule this agreement between plaintiff and Huff to be void and unenforceable as illegal and against public policy. Because plaintiff's prayer for relief is predicated upon his acquiring a legal interest in stock of AA All American, Inc., and because such acquisition is alleged to have occurred pursuant to an illegal contract, I sustain the defendants' demurrer to the extent it pertains to the illegality of this contract.

During the hearing of July 27, 1999, the plaintiff, by counsel, requested leave to amend his bill of complaint if the demurrer is sustained. I therefore grant the plaintiff leave to amend his bill of complaint within twenty-one days

of the entry of the order incorporating this opinion. If the bill of complaint is not amended within that time period, the bill of complaint will be dismissed with prejudice.

December 16, 1999

In the captioned matter, defendants, William Raymond Huff and AA All American, Inc., filed a demurrer to the plaintiff's original bill of complaint. In this demurrer, the defendants argued that plaintiff's claim is barred by the statute of limitations (three years for oral contracts); by the equitable doctrine of laches; and because the purported contract is unenforceable for reasons of illegality. In a letter opinion dated August 4, 1999, I ruled that plaintiff's claim is predicated upon an agreement that is void and unenforceable as illegal and against public policy. I therefore sustained defendants' demurrer on this basis, but granted plaintiff leave to file an amended bill of complaint. These rulings were incorporated in an order entered on August 26, 1999.

On September 15, 1999, plaintiff filed an amended bill of complaint. The defendants again filed a demurrer and their arguments are essentially the same as those advanced in the original demurrer: that plaintiff fails to state a claim upon which relief can be granted; that plaintiff's claim is barred by the equitable doctrine of laches; and that plaintiff is barred in equity from obtaining enforcement of an agreement that is illegal and against public policy.

Counsel for the parties argued their respective positions during a hearing on December 10, 1999, and though I indicated at the conclusion of the hearing my rulings on the demurrer, I agreed to state those rulings in a letter opinion.

Because the issues raised by the demurrer to the amended bill of complaint are essentially the same as those addressed in my letter opinion dated August 4, 1999, I incorporate in this opinion the analysis and rulings stated in my earlier opinion. For the reasons that follow, and those stated in my letter opinion dated August 4, 1999, I sustain the demurrer of the defendants to plaintiff's amended bill of complaint.

The Supreme Court of Virginia has stated the following effect of a demurrer:

A demurrer admits the truth of all material facts that are properly pleaded. Under this rule, the facts admitted are: "(1) facts expressly alleged, (2) facts which are by fair intendment impliedly alleged, and (3) facts which may be fairly and justly inferred from the facts alleged."

*Bowman v. State Bank of Keysville*, 229 Va. 534, 536, 331 S.E.2d 797 (1985), quoting *Ames v. American National Bank*, 163 Va. 1, 37, 176 S.E. 204, 215 (1934).

In his amended bill of complaint, plaintiff alleges that he entered into an oral partnership agreement with Huff in the fall of 1989. Pursuant to this agreement, plaintiff "was to receive 50% of all profits of the partnership and Huff to receive a like amount." Amd. Bill of Com., para. 1.

The plaintiff further alleges the following in his amended bill of complaint:

2. That prior to January 1990, plaintiff informed the defendant, Huff, that due to a previous sickness, he had been unable to pay his income taxes and that a tax lien may be imposed on the partnership. He, plaintiff, suggested that the parties incorporate so as to have an orderly flow of the business as well as enable him to pay back his back taxes. Thereby, on January 1, 1990, the parties entered into a written agreement transferring all of their right, title, and interest to AA All American, Incorporated. Copy of which agreement is herewith attached marked "Exhibit A." The document was not prepared by an attorney and thus did not reflect the full agreement of the parties.

3. It was agreed by the parties that by incorporating they could continue the business in an orderly manner and thus enable your plaintiff to pay the taxes due the IRS in case a lien was filed against your plaintiff. The plaintiff and defendant agreed that no stock in AA All American, Inc., would be issued to plaintiff until plaintiff's taxes had been paid in full.

4. Two years later a tax lien was filed against your plaintiff which has since been paid in full.

Amd. Bill of Com., Para. 2, 3, and 4.

During oral arguments, plaintiff, by counsel, seemed to argue that he requests an accounting pursuant to the oral partnership agreement which provided that plaintiff and Huff would divide the profits of the partnership on an equal basis. Indeed, in the amended bill of complaint, the prayer for relief states:

plaintiff moves for an accounting to be had between the parties for the amounts due each partner trading in the name of AA All American,

Inc., by the operation of AA All American, Inc., for the years from its inception through March 1995.

Amd. Bill of Com., p. 5.

Plaintiff further requests that this accounting include the settlement reached in the suit filed in United States District Court for the Western District of Virginia and captioned *AA All American, Inc. v. Seal-Dry USA, Inc.* Plaintiff then requests "that a Commissioner in Chancery be appointed to determine the rights of the parties herein." Amd. Bill of Com., p. 5.

As previously quoted, plaintiff alleges in paragraph 2 of his amended bill of complaint that the business that originally operated as a partnership was subsequently incorporated. Plaintiff further alleges in paragraph 2 of the amended bill of complaint that the parties transferred all title and interest in the partnership to AA All American, Inc., by virtue of an agreement that is attached to the amended bill of complaint as Exhibit A. For purposes of the demurrer, these allegations are admitted. Consequently, according to plaintiff's own allegations, the partnership was supplanted by a corporation. A corporation is owned by its shareholders, and any interest in the assets and profits of a corporation must be determined in accordance with Virginia law and a corporation's articles of incorporation, not in accordance with any pre-existing partnership agreement. Therefore, if the plaintiff relies upon the pre-existing oral partnership agreement for the relief he requests, such relief cannot be granted him as a matter of law. Furthermore, the prayer for relief seems to state a nullity. Though plaintiff requests an accounting "for the amounts due each partner trading in the name of AA All American, Inc.," a partnership cannot legally trade in the name of a corporation. Moreover, a business cannot be both a partnership and a corporation, and the fact of incorporation is specifically alleged in the amended bill of complaint and is therefore admitted for purposes of the demurrer. The prayer for relief obfuscates the legal distinction between a partnership and a corporation. At any rate, no claim has been stated in this regard which entitles plaintiff to the relief he requests.

Though stated more clearly in the original bill of complaint, it is nevertheless apparent that the claim stated in the amended bill of complaint is founded upon the agreement alleged in paragraph 3 by which plaintiff and Huff agreed to delay transfer to plaintiff of his shares of stock in AA All American, Inc., until plaintiff had satisfied his indebtedness to the IRS. According to paragraph 10 of the amended bill of complaint, AA All American, Inc., settled a civil suit in September of 1998 for a substantial amount of money. This civil recovery constitutes an asset of the corporation,

and plaintiff seeks without question a portion of this recovery. In my opinion, under the allegations set forth in the amended bill of complaint, plaintiff can be entitled to a portion of the civil recovery only if he is a shareholder of the corporation. To qualify as a shareholder, plaintiff must ask this court to enforce the alleged agreement.

According to the facts expressly alleged in the amended bill of complaint and those fairly implied and justly inferred, plaintiff wished to conceal his interest in the pre-existing partnership from the consequences of his indebtedness to the IRS. By agreement between plaintiff and Huff, the partnership was incorporated. Plaintiff, according to his allegations, acquired an interest in the corporation; however, to avoid attachment by the IRS of plaintiff's interest in the corporation, plaintiff and Huff agreed that no shares of stock would be issued to plaintiff until he satisfied his indebtedness to the IRS. Apparently, plaintiff's interest in the corporation (his shares of stock) would be held by Huff in trust during which time plaintiff would have something akin to an equitable interest in the corporation, and not legal title to shares of stock. Now that plaintiff has satisfied his indebtedness to the IRS, he wishes this court to enforce his agreement with Huff and transfer to him legal title to his shares of stock in AA All American, Inc. Once plaintiff is deemed to be a shareholder of AA All American, Inc., he wishes an accounting of the assets of AA All American, Inc., including the recovery in the civil suit, and distribution of his share of the corporation's assets as determined by a commissioner.

The effect of the agreement, as its terms are alleged by plaintiff, was to conceal a financial asset from the IRS as creditor. This agreement is in my opinion void because it is illegal, and/or against public policy, and a court of equity should not lend its authority to the enforcement of such a contract.

In this regard, the Supreme Court of Virginia has stated:

> If a plaintiff cannot open his case without showing that he has broken the law, a court will not assist him, whatever his claims in justice may be upon the defendant.

*Old Dominion Transportation Co. v. Hamilton*, 146 Va. 594, 608, 131 S.E. 850 (1926).

I also find, as I stated from the bench, certain sections of Michie's Jurisprudence and the Virginia cases cited in those sections to be very instructive. For example, the following rule in equity is discussed in Michie's Jurisprudence:

A court will not exercise its equitable jurisdiction to enforce a contract growing immediately out of and connected with an illegal or immoral act. If a contract be illegal, whether because *malum in se* or *malum prohibitum*, a court will deny affirmative relief to either party and leave them where it finds them ... .

In other words, where a contract has been made to accomplish a fraudulent purpose, equity will not at the suit of a party to the fraud, a *"particeps doli,"* compel execution of the contract, decree its cancellation, or set it aside and restore property or other interest fraudulently transferred, but will leave the parties in the position in which they have placed themselves.

4B Michie's Jurisprudence, *Contracts*, § 126.

The general rule pertaining to parties *in pari delicto* is discussed as follows:

As a general rule a court will not enforce a fraudulent or vicious contract, the consideration of which is illegal or contrary to public policy. The maxim *"in pari delicto potior est conditio defendentis,"* that is, "when both parties are equally guilty, the defendant shall prevail," is very generally applicable to such a case. So where a contract is tainted with fraud and the parties are *in pari delicto*, the court should not lend its aid to either.

If the parties are *in pari delicto* and one of them has performed the illegal agreement in whole or in part, he cannot recover from the other party that which he has parted with under the contract. The law simply leaves the litigants in the plight in which they have seen fit to place themselves without undertaking to balance benefits or burdens. If property of the plaintiff is in the possession of the defendant and he is forced to rely upon the illegal contract in order to recover it, the law will extend him no aid. Neither will equity afford injunctive relief to either party on a complaint of the other that an illegal contract is being violated.

The principle is applied in the same manner where the illegality is merely a *malum prohibitum*, being in contravention to some positive statute, and when it is *malum in se*, as being contrary to public policy or good morals.

4B Michie's Jurisprudence, *Contracts*, § 129.

A specific application of this rule is discussed as follows:

Where a contract has been made to accomplish a fraudulent purpose, a court will not, at the suit of a party to the fraud — a *particeps doli* — if the contract is executory, either compel its execution or decree its cancellation; nor, after it has been executed, or the court set it aside, and thus restore to the plaintiff the property or other interest which he has fraudulently transferred. It will leave the parties in the position in which they have placed themselves.

The best illustration of this question is the rule that a voluntary or fraudulent conveyance is good between the parties, although made to hinder, delay, and defraud creditors. In such a case, the law leaves them where they have placed themselves and will neither aid such grantor to regain his property nor such grantee to reclaim his purchase money. The courts have said that rather than thus encourage the fraud of a debtor or his creditor, it is better to leave the grantor in the power of his accomplice, the fraudulent grantee, though by doing so this fraudulent grantee may be profited.

4B Michie's Jurisprudence, *Contracts*, § 130.

As authority for the above-quoted statements, various decisions rendered by the Supreme Court of Virginia and the Supreme Court of West Virginia are cited in the footnotes in each section of Michie's Jurisprudence. For example, the following statement of the Supreme Court of Virginia is cited:

A party who, to hinder and delay his creditors fraudulently conveys his property to another, cannot, except under peculiar circumstances, maintain a bill to rescind the contract. The grantor and grantee being generally *in pari delicto*, neither is entitled to come into equity.

*James v. Bird*, 35 Va. (8 Leigh) 510 (1837).

In another case cited in Michie's Jurisprudence, the Supreme Court of Virginia stated:

Courts of equity will not relieve parties from the consequences of their own fraud ... but will leave them where they have placed themselves, by their fraudulent contracts.

*Harris v. Harris' Ex'or*, 64 Va. (23 Gratt.) 737, 752 (1873).

I therefore rule that the agreement as alleged in paragraph 2 of the amended bill of complaint, by which plaintiff and Huff agreed to delay transfer of shares of stock in AA All American, Inc., to plaintiff until plaintiff

had satisfied his indebtedness to the IRS, is void and unenforceable because its terms are illegal and/or against public policy. It is my opinion that the purpose of this agreement was to hinder, delay, and defraud the IRS as creditor, and in accordance with the above-stated principles, the parties should be left in the position in which they have placed themselves. It being my further opinion that plaintiff is not entitled to the relief he requests without enforcement of this alleged agreement. I rule that plaintiff has failed to state a claim upon which relief can be granted. I therefore sustain defendants' demurrer to plaintiff's amended bill of complaint.

I am also convinced that any further amendments to the bill of complaint would only result in relitigation of the same issues. I therefore dismiss with prejudice the amended bill of complaint.