# CIRCUIT COURT OF ROANOKE COUNTY

Carl V. Woodie

v.

Carl David Woodie

June 29, 2007

Case No. CH04-13

BY JUDGE ROBERT P. DOHERTY, JR.

After an unsuccessful family business failed, father attempted to set up a new business that would help fund his retirement and that would provide employment, equity, and income for his two sons. That business was a general partnership called Tri-W Properties. It was created by an oral agreement in 1987 and was designed to buy and sell land, build apartments, and rent them for profit. Because only one of the sons was available at that time, father, mother, and son David became the only general partners. They were equal partners, each owning one-third of the business, each entitled to one-third of the profits, and each responsible for one-third of the losses.

In 1991, in order to comply with a lending institution's requirements to borrow money to acquire and/or improve a parcel of real estate, the parties prepared and entered into a written agreement creating a joint venture to buy, sell, and manage real estate for profit. They gave it the name Tri-W Properties, the same name as their general partnership. At least one of the parties is convinced that this document is their partnership agreement. Both of the parties recognize the terms of the joint venture agreement to be the same as the terms of their partnership agreement that operated from 1987 and continues through this litigation.

Upon mother's death, father became a two-thirds partner and son remained a one-third partner. Father handled the financial portion of the business, arranging for the borrowing of funds to acquire properties and to

build apartments, and son oversaw construction, managed and maintained the apartments, and collected the rents. Son was paid for these services in the form of a monthly car and housing allowance. It was never made clear to the Court why the parties used this method to provide income to the son. It appears to be nothing more than a subterfuge to avoid paying federal and state income tax. In any case, that is what son did for a part or all of his living. Father did not receive any income from the partnership.

Frequently, because of vacancies, expenses, and unpaid rents there were not sufficient funds to provide the son's car and housing allowance, maintain the apartments, and continue with necessary construction, repair, and maintenance costs. When those money shortages occurred, father poured cash into the partnership. He did so by borrowing money personally for the partnership, sometimes on home equity loans, sometimes on his personal credit cards, and sometimes by simply paying partnership bills with his credit cards. He also diverted the rent he received from a commercial garage property he personally owned into the partnership bank account. His son assisted by managing his father's separate rental property. Son never put any money or property into the partnership. Son was not always aware of the partnership's money problems and did not know the method or the frequency by which father loaned extra money to the business. Partnership assets were occasionally used to maintain father's separate rental property. All of the rent from that parcel of land was listed as income to the father and taxed to him through his individual income tax returns.

Father operated the financial end of the business like a sole proprietorship. He simply kept track of his personal loans to the partnership in his head or through his personal records, and he maintained only basic minimum business records. The business was able to operate this way for years because son trusted father. The parties ultimately had a falling out. Father and son both erroneously accused the other of bad faith and/or dishonesty in the operation of the partnership. This was a direct result of poor record keeping and poor business practices. The son did not totally understanding the financial side of the business and did not really understand the extent to which his father was using his personal funds to keep the partnership going. The father expected more from his son than he was able to give. This lawsuit for a settlement of partnership accounts is the result. A receiver has been appointed and the partnership assets have been converted to cash. Some of the partnership debts have been paid.

*Settlement Problems*

The unique business practices of the parties have created issues and problems that must be solved before the partnership accounts can be settled. Accordingly, the Court makes the following rulings and findings of fact.

Plaintiff has standing to bring this action before the Court. He is a general partner and was at the time of the filing of this lawsuit. See § 50-73.103(B) and § 50-73.117(5), Code of Virginia (1950), as amended.

The statute of limitations has not run on any of the loans or advances made to the partnership by one of its partners. The accrual of the action does not commence until the settlement of partnership accounts is completed. See § 8.01-246(3), Code of Virginia (1950), as amended, and *Roark v. Hicks*, 234 Va. 470, 475-76 (1987).

The parol evidence rule is not a bar to the presentation of evidence of the existence of the partnership debts. The parol evidence rule states that oral testimony is not admissible to vary, contradict, or explain the terms of a complete and unambiguous writing. In this case, there is no complete and unambiguous writing setting forth the terms of the various loan agreements. There are, however, some writings indicating the existence of loan and repayment agreements. Parol evidence is admissible to prove the existence of, and to establish the terms of, complete agreements that are not totally contained in a single writing, as in this case. *Shevel's, Inc., Chesterfield v. Southeastern Associates, Inc.*, 228 Va. 175, 182-83 (1984).

The statute of frauds, § 11-2, Code of Virginia (1950), as amended is not a bar to the repayment of loans, advances, or payments made by a partner to the partnership. (A) The claim that the statute of frauds applies because the loans were not in writing is not applicable because some written memoranda or notation exists concerning each separate loan transaction and because the father proved that he did in fact make the payments or advancements to the partnership. "The statute of frauds, procedural and remedial in nature, is concerned with the enforceability of a contract and not its validity. . . . The statute will not be applied when the result is to cause a fraud or perpetrate a wrong, because the object of the statute is to prevent frauds." *Drake v. Livesay*, 231 Va. 117, 120 (1986). (B) The claim that the statute of limitations prevents repayment of the loans because the loan agreements were not to be performed within a year fails because the repayments could have occurred within one year. *Seddon v. Rosenbaum*, 85 Va. 928, 933 (1889). (C) The claim that the statute of frauds prevents repayment of the loans because they exceed the aggregate amount of $25,000.00 also fails because the lending of funds was an ongoing activity with part performance by periodic full and

partial repayments. *Runion v. Helvestine*, 256 Va. 1, 7-8 (1998). (D) Finally, the "loans" were not contracts *per se*, but "advances" and/or "payments made" under § 50-73.99(C) and (D), Code of Virginia (1950), as amended.

The partnership loans made by father were in fact made "in the ordinary course of the business of the partnership or for the preservation of its business or property. . . ." as contemplated by § 50-73.99(C), Code of Virginia (1950), as amended. Accordingly, they do represent legitimate debts of the partnership and are required to be repaid. In addition, because of the unique way in which this partnership operated and because one of the goals of the father was to fund it in such a way that he could provide an income for his son to live on, the loans can also be considered to be "advances to the partnership beyond the amount of capital the partner agreed to contribute. . . ." under § 50-73.99(D), and thus also subject to reimbursement.

Neither party is before this Court with "unclean hands" as alleged. Both partners tried their best to make a go of the partnership business, and each tried to communicate and account to the other, to the best of their ability, their individual efforts, contributions, and thoughts concerning the partnership. Neither party tried to steal anything from the partnership. Neither party tried to take unfair advantage of the other. Neither party totally understood what the other was doing or trying to do.

Because of the unusual manner in which this partnership operated and because of the use of father's personal credit cards to pay partnership bills, the payments by the receiver of the interest on the credit card balances constitute an appropriate application of partnership assets.

Son was entitled to his housing and car allowance while he acted as sole manager of the rental units. Once a receiver was appointed, son's duties ceased. All money he received from the partnership thereafter came from his equity in the partnership assets. The only exception to this are the funds the receiver paid him for work performed at the direction of the receiver.

The Tazewell Avenue rental property was wholly owned by father and mother as tenants by the entireties, prior to the creation of the partnership. Ultimately, by operation of law after the death of mother, it became the sole property of father. It was never transferred to the partnership. All income received from that property that ended up in the partnership coffers came as a loan from father. The fact that the partnership paid some of the expenses for the Tazewell Avenue property was a mistake. Father must reimburse all of those expenses that were paid by the partnership. See § 50-73.90(D), Code of Virginia (1950), as amended.

Defendant claims $26,589.29 from the sale of Nelson Avenue properties. The evidence presented was that $79,767.87 was received by the partnership from its sale. See Defendant's Exhibit O, dated October 11, 2006.

398

Of that money, $6,000.00 was paid to fund the son's share of a family cruise. Father testified on October 11, 2006, at page 196 of the transcript that "the purpose of selling that property was to get out of debt so we could have some cash flow, and so we paid the $20,000 debt off and we had another larger one, the cap on it was $50,000 . . . we paid part of that off. Sufficient evidence was not presented to satisfy the Court as to what debts were paid." Accordingly, the parties are instructed to schedule another hearing for the presentation of additional evidence on this point.

When the break-up of the partnership was occurring, Father obtained a contract to sell the Vineyard Avenue property for $450,000.00 to Timothy Leonard. Shortly thereafter, son obtained an offer to purchase the same land from Paul Dodson for the sum of $460,000.00. That offer, tendered on a real estate contract form that only required a signature of either partner to become operational, was never signed by a partner and thus never accepted. Each of the contracts was subject to some terms that were different, such as financing and real estate agent's commissions. Son claims that because his proposed sale was for a greater amount than the contract obtained by father, father should pay the net difference to the partnership. Depending on how the evidence is viewed, that net difference could be anywhere between $10,000 and $24,666.67. The difficulty with son's argument is that, when the Dodson contract was tendered to son, he rejected it and made a counter-offer. Since the Dodson contract was rejected, it was no longer a viable contract, and thus not subject to being enforced as son argues. *Richardson v. Wilson*, 187 Va. 536, 546 (1948).

In the alternative, the Court notes that the contract obtained by father was obtained first. The property was already sold at the time son obtained his offer. The partnership was liable on the first contract and could have been sued and incurred substantial damages had they not followed through with that contract. Had the second offer been accepted by son, it would have been of no force or effect and could easily have embroiled the parties in a lawsuit. *Allen v. Linstrom*, 237 Va. 489 (1989).

Neither party breached their fiduciary duty to the partnership. This is simply a factual question which the Court resolves by finding that the parties tried their best to do the right thing with regard to each other and to the partnership. See § 50-73.102, Code of Virginia (1950), as amended.

The argument that one or the other of the parties lacked credibility or was biased is not totally valid. The parties were unsophisticated businessmen. They saw the facts of this case from different vantage points and arrived at different understandings of the significance of those facts. When conflicts developed in the testimony of the parties, the Court usually accepted the

evidence of the father over that of the son, but not always. Neither party purposely attempted to mislead, slant, or falsify their testimony. Neither party attempted to take unfair advantage of the other. Both parties believed that the evidence they presented was correct.

The loan made to son from the partnership during the construction of his home is simply that, a loan. The evidence that it was an advance payment of his home and car allowance is creative, but not credible. Son must repay it to the partnership.

Each party should pay his own attorney's fees and costs.

### Motion to Strike

Defendant's Motion to Strike is simply a succinct statement in the form of a motion, of the various issues raised and discussed in this letter opinion. It is, for the reasons set forth herein, denied.

### Conclusion

The settlement of the partnership accounts is now nothing more than an arithmetic problem that can be solved by applying the various formulas and decisions set forth herein. All of the proceeds of the business, after payment of outstanding debts and costs, should be divided one-third to son and two-thirds to father. The income paid son for his services was a cost of doing business and will not be treated as a partnership draw by son. Father must reimburse the partnership for the money used to maintain the Tazewell Avenue property. The advances to the partnership from credit card payments, deposits to the partnership account, and by all of the methods used by father to put money into the partnership must be reimbursed to him. The loan to son for some of the construction costs of his home is not an advance on future earnings by son, but simply a loan. Son has to pay that money back to the partnership. The determination of credits or debits to the partnership from the Nelson Avenue property requires additional evidence.

The lawyers should be able to do the arithmetic and determine the total unreimbursed advances to the partnership made by father, the outstanding amount of the loan owed by son, and the partnership funds used to maintain the Tazewell Avenue property. The fees of the receiver are approved and should be paid as a partnership cost. The accountant fees are bills of the partnership and not of the individual partners. They were necessary during this winding up phase and are simply substitutes for the periodic accountant bills the parties should have incurred over the years they operated their business.