PRESENT:  Goodwyn, Mims, Powell, Kelsey, McCullough, and Chafin, JJ., and Russell, S.J.

T. MUSGROVE CONSTRUCTION COMPANY, INC.

OPINION BY
v.  Record No. 190180                          JUSTICE STEPHEN R. McCULLOUGH
April 9, 2020
EARL CRAIG YOUNG, D/B/A FOXFIRE TOWING


FROM THE CIRCUIT COURT OF FRANKLIN COUNTY
Clyde H. Perdue, Jr., Judge

T. Musgrove Construction Company, Inc., ("Musgrove") appeals from a judgment

awarding FoxFire Towing damages in the amount of $56,595.11.  The vehicle towed and stored

belonged to Musgrove, but it was not engaged in company business when the accident occurred.

We conclude that the doctrine of *quantum meruit* is not applicable on these facts, and that

established principles governing the unjust enrichment remedy foreclose recovery for some of

the charges FoxFire sought to obtain.  Accordingly, we affirm in part and reverse in part the

judgment below and remand the case for a hearing to determine FoxFire's reduced damages.

BACKGROUND

In 2015, Musgrove was in operation but not profitable.[1]  Tommy Musgrove is the

majority shareholder.  Tommy agreed to let his son Timmy and David Wayne Truman harvest

some timber from a property Tommy owned so they could make some money.  Tommy could

not pay them for removing the trees, but they could sell the logs.  With Tommy's permission,

Truman and Timmy borrowed a company dump truck to haul the logs.

After Timmy and Truman cut the logs and placed them in the dump truck, they were

involved in an accident.  The accident occurred on August 24, 2015.  The circumstances of the

---

[1] For the sake of clarity, we will refer to Tommy Musgrove as "Tommy," and Timmy
Musgrove, Tommy's son, as "Timmy."

accident are not clear. The dump truck ended up resting on its side with the logs spilled out of the truck. Musgrove's only connection to the accident is that the company owns the truck.

Originally, Ken Morris, with Ken Morris Garage, arrived at the scene. He requested assistance from FoxFire Towing. FoxFire is the only company in Franklin County with the equipment to handle this kind of job. FoxFire responded. To straighten the dump truck, FoxFire employed a rotating style crane and other vehicles. FoxFire also employed an excavator and a skid steer loader to place the spilled logs back in the damaged dump truck. In addition, FoxFire removed a cherry tree, including the stump, that had been knocked over in the accident. Finally, FoxFire collected soil that had been contaminated by fluid leaking from the truck, placed the soil in hazardous material, or "hazmat," barrels, and later paid for the disposal of the barrels. FoxFire then towed the damaged dump truck away using a heavy duty wrecker and stored it in a wooded area behind Craig Young's house. Craig Young is the owner of FoxFire.

FoxFire sent Musgrove a bill for $12,380.11. The charges covered returning the truck to an upright position, towing away the dump truck, cleaning up the scene, and an administrative fee. Young explained that the administrative fee is to "[t]ake care of all the paperwork, clerical work, answer the phone calls, people come get their things, people come in after hours to clean their vehicles out, somebody has got to be there to close the gates, got to meet them there." FoxFire also charged $45 for each day it stored the damaged dump truck. When Musgrove did not pay, FoxFire sued. By the time the suit was filed, in June 2017, the storage fees had risen to $28,980. In response, Musgrove filed counterclaims for fraud and conversion.

At trial, FoxFire presented evidence of the work it performed to right and tow the dump truck, the equipment it used, as well as its remedial work in picking up the logs and cleaning up the accident scene. Young explained the charges, and stated that they were his standard charges.

2

He offered evidence of services he provided for other accidents which showed comparable charges. The evidence also established that, following the accident, the salvage value of the dump truck was $2,000.

The trial court denied Musgrove's motion to strike. The advisory jury returned a verdict in the amount of $56,595.11.[2] The jury noted on the jury verdict form that it was deducting $2,000 for the salvage value of the truck. The jury rejected Musgrove's counterclaims. Musgrove filed a motion to set the verdict aside, which the trial court denied. The trial court entered judgment in the amount of the advisory verdict and this appeal followed.

ANALYSIS

Musgrove contends that most of the charges FoxFire imposed are unjustified because they constitute a recovery that is not warranted under the doctrine of unjust enrichment. Musgrove contends that it was not unjustly enriched *as a vehicle owner*, except for the towing of the corporation's vehicle. FoxFire responds that the charges it imposed are reasonable and supported by the evidence. FoxFire relies on the test for *quantum meruit*, whereas Musgrove premises its argument on the doctrine of unjust enrichment. To resolve the dispute, we must disentangle the two theories, which can easily be conflated. *See, e.g.*, *Bowden v. Grindle*, 651 A.2d 347, 350 (Me. 1994) (recognizing "that there has been considerable confusion between the terms 'quantum meruit' and 'unjust enrichment'").

---

[2] The parties in this case agree that the jury verdict was advisory on the claim for FoxFire's towing, remediation and storage services but binding on Musgrove's (rejected) counterclaim. The question of whether a jury trial is available as a matter of right in such cases is not before us and, therefore, we express no opinion on the subject.

I.      Choosing the applicable framework:  *Quantum meruit* vs. unjust enrichment.

Turning first to *quantum meruit*, a Latin phrase meaning "as much as he has deserved," Black's Law Dictionary 1361 (9th ed. 2009), we have addressed the remedy as follows: "[w]here service is performed by one, at the instance and request of another, and . . . nothing is said between the parties as to compensation for such service, the law implies a contract, that the party who performs the service shall be paid a reasonable compensation therefor."  *Mongold v. Woods*, 278 Va. 196, 203 (2009) (quoting *Rea v. Trotter*, 67 Va. (26 Gratt.) 585, 592 (1875)).[3] The remedy available to the plaintiff in *quantum meruit* is an award of damages amounting to the reasonable value of the work performed, less the compensation actually received for that work. *Id.*

The cause of action for unjust enrichment, on the other hand, applies as follows:  (1) "[plaintiff] conferred a benefit on [defendant]; (2) [defendant] knew of the benefit and should reasonably have expected to repay [plaintiff]; and (3) [defendant] accepted or retained the benefit without paying for its value."  *Schmidt v. Household Fin. Corp., II*, 276 Va. 108, 116 (2008) (citing *Nedrich v. Jones*, 245 Va. 465, 476 (1993)).

The measure of recovery for *quantum meruit* for a contract implied in fact is the reasonable value of the services provided.  *Mongold*, 278 Va. at 203.  The measure of recovery

---

[3] "A contract implied in fact is a contract, but not an express contract. . . .  It is not an express contract because a term has not been discussed.  Often it is the price term."  Candace Kovacic-Fleischer, *Quantum Meruit and the Restatement (Third) of Restitution and Unjust Enrichment*, 27 Review of Litigation 127, 132-33 (2007).  "A contract implied in law, or a quasi-contract, is not a contract, but an action in restitution in which the defendant received a gain at plaintiff's expense under circumstances that make it unjust for the defendant to keep the gain."  *Id.*

for unjust enrichment is limited to the benefit realized and retained by the defendant. *Schmidt*, 276 Va. at 116. The measure of damages is thus not necessarily the same.

A plaintiff can seek recovery in *quantum meruit* when the work was done at the instance and request of another. *Mongold*, 278 Va. at 203. *See also Haynes Chemical Corp. v. Staples & Staples*, 133 Va. 82, 87 (1922) ("Where one renders services for another at the latter's request the law, in the absence of an express agreement, implies a promise to pay what those services are reasonably worth, unless it can be inferred from the circumstances that those services were to be rendered without compensation."). For example, *quantum meruit* is available when (1) the parties contract for work to be done, but the parties did not agree on a price, (2) the compensation mentioned is too indefinite, (3) there is a misunderstanding as to the price to be paid, or, (4) in some instances, the contract is void and of no effect. *Marine Dev. Corp. v. Rodak*, 225 Va. 137, 140-41 (1983). When the defendant has not requested the plaintiff's services, a plaintiff's claim is for unjust enrichment. *See* Candace Kovacic-Fleischer, *Quantum Meruit and the Restatement (Third) of Restitution and Unjust Enrichment*, 27 Review of Litigation 127, 132-33 (2007).

Here, Musgrove did not request FoxFire's services. Therefore, a cause of action for *quantum meruit,* i.e., for a contract implied in fact, does not apply. Instead, the well-established doctrines for unjust enrichment provide the rule of decision. FoxFire is entitled to recover from Musgrove to the extent Musgrove benefitted from its actions.

II. FoxFire is entitled to relief under a theory of unjust enrichment, but only to the extent that Musgrove was benefitted.

A truck owned by Musgrove crashed and, because it had tipped over onto its side, had to be brought upright and then towed. The law forbids leaving a vehicle immobilized for more than 24 hours on or adjacent to a roadway, Code § 46.2-1209, or leaving vehicles on private property,

5

Code § 46.2-1215.[4] *See also* Franklin County Ordinance § 11-96 (forbidding the abandonment of a vehicle on the public highways of the county or parking the vehicle on the highway more than four days). Musgrove was benefitted by the righting and towing of its truck. Consequently, FoxFire can recover its reasonable charges for work expended in bringing the truck upright and towing it away.

FoxFire's bill reflects a $500 towing charge. FoxFire is entitled to claim this charge for towing Musgrove's dump truck away. Also, although the bill lists certain charges as "for recovery/clean up," the evidence at trial established that some of the vehicles listed, such as the rotating crane, were used to return Musgrove's truck to an upright position so that it could be towed away. Young testified that the rotating crane wrecker was used to pick up the dump truck, which was lying on its side. Morris testified that his wrecker was employed to help get Musgrove's truck upright. The mileage charges may be justified. To the extent charges were generated by the need to return Musgrove's dump truck to an upright position so that it could be hauled away, the charges benefitted Musgrove and, therefore, FoxFire was entitled to recover such items under the standards of unjust enrichment. The record is unclear, however, concerning the extent to which some of the charges listed on the bill are proper under the standards governing unjust enrichment. Consequently, we remand the case for resolution of those charges.

With respect to the fees associated with storing Musgrove's truck, the Restatement (Third) of Restitution and Unjust Enrichment provides as follows:

---

[4] Code § 46.2-1212.1(A)(1) allows the State Police or local law enforcement agency to remove "[a] vehicle, cargo, or other personal property that has been (i) damaged or spilled within the right-of-way or any portion of a roadway in the primary state highway system and (ii) is blocking the roadway or may otherwise be endangering public safety." Subsection (C) of this statute further provides that under certain circumstances not present here, the owner may have to reimburse the Department of Transportation, the State Police, and others for costs associated with the removal and subsequent disposition of property.

6

(1) A person who takes effective action to protect another's property from threatened harm is entitled to restitution from the other as necessary to prevent unjust enrichment, if the circumstances justify the decision to intervene without request. Unrequested intervention is justified only when it is reasonable to assume the owner would wish the action performed;

(2) Unjust enrichment under this section is measured by the loss avoided or by a reasonable charge for the services provided, whichever is less.

Restatement (Third) of Restitution and Unjust Enrichment § 21 (2011).

An illustration provides as follows:

Owner's car is stolen, damaged, and abandoned by [a] thief. The car is later found by the police, who direct Garage to tow and store it. Despite appropriate efforts, 10 months pass before Owner is identified by the police. In the interim, Insurer pays Owner's claim for theft loss and takes an assignment of title. Discovering the whereabouts of the car, Insurer reclaims possession. Absent a statute defining Garage's rights in these circumstances, Garage has a claim in restitution against Insurer for its reasonable and customary charges for towing and 10 months' storage, not exceeding the car's value.

*Id.* cmt. b, illus. 1. An analogous situation exists here. FoxFire's claim for storing Musgrove's dump truck cannot exceed the loss avoided by the service provided, which here equals the truck's salvage value, in this instance, $2,000. Musgrove was not benefitted for any storage fees in excess of that amount. FoxFire's recovery for storage fees, therefore, must be capped at $2,000.

The answer is different, however, for the fees associated with the scene remediation and recovery of the logs. Under settled Virginia law, the owner of a vehicle generally "is not vicariously liable for the negligence of another person simply because the negligent party was operating the vehicle with the owner's permission." *Dreher v. Budget Rent-A-Car System, Inc.*, 272 Va. 390, 395 (2006). The evidence establishes that although Timmy and Truman were

driving Musgrove's truck, they were not on company business. Musgrove as the vehicle's owner was not responsible for damage to trees in the area or for cleaning up the spilled logs. Under the test for unjust enrichment, there was no benefit to Musgrove as the vehicle owner from efforts undertaken by the plaintiff to clean up the accident scene and pick up the logs. Consequently, charges associated with those activities cannot be recovered against Musgrove in this lawsuit for the simple reason that the company was not unjustly enriched by the actions that gave rise to those charges. Specifically, FoxFire is not entitled to recover charges for its use of the skid steer loader and the excavator to pick up the logs or for cleaning up the fallen cherry tree. Additionally, under the test for unjust enrichment, FoxFire is not entitled to recover other charges from Musgrove associated with cleaning up the scene. Those charges did not benefit Musgrove. Therefore, FoxFire is not entitled to recover under unjust enrichment principles for the charges for buying or disposing of hazmat barrels, or the use of the hazmat equipment trailer.

Finally, FoxFire cannot claim an administrative fee. That fee was to "[t]ake care of all the paperwork, clerical work, answer the phone calls, people come get their things, people come in after hours to clean their vehicles out, somebody has got to be there to close the gates, got to meet them there." That fee benefits FoxFire, but Musgrove is not unjustly enriched in any way in connection with a charge to cover FoxFire's administrative overhead.

CONCLUSION

For these reasons, we will affirm in part and reverse in part the judgment of the trial court. We remand the case for an assessment of damages not inconsistent with this opinion.

*Affirmed in part,*
*reversed in part,*
*and remanded.*

8